■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROOSEVELT BOOKER COBB, Appellant. — Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered January 26, 1982, upon a verdict convicting defendant of two counts of the crime of criminal possession of a controlled substance in the third degree. At approximately 8:00 P.M. on Wednesday, July 1, 1981, Detective Kenneth Sutton of the Narcotics Enforcement Bureau of the

Albany City Police Department arrested Charles Addison on an assault warrant. Addison asked Detective Sutton whether he could help himself in that he knew where there was cocaine coming in that was "going to go right away". Detective Sutton advised Addison that the District Attorney would be alerted to any co-operation on his part. Addison then told Detective Sutton that defendant Roosevelt Booker Cobb, while at his (Addison's) motel room at 3:00 A.M. that day, had said that he was leaving at noon to drive to New York City to buy cocaine. Addison also said that he had telephoned defendant at defendant's 9 Benjamin Street apartment in the City of Albany at noon that day and that defendant stated that he and Tonalisa Ward were about to leave for New York City. Addison also told Detective Sutton that defendant would be driving a rented brown two-door Oldsmobile. Addison had on prior occasions given information to the Albany police which aided a hashish arrest and arrest for an armed robbery. Detective Sutton also had information from a Detective Johnson of the Albany Police Department that defendant would sell cocaine at the Falcon's Nest bar in Albany on Wednesday nights between 1:00 A.M. and 3:00 A.M., and that he would carry the cocaine there in a leather bag. However, Detective Sutton did not know the source of Detective Johnson's information. Additionally, according to Detective Sutton, a confidential informant had told him that he had personally witnessed defendant and Ward selling cocaine at the Falcon's Nest bar and that the best time for this was on Wednesday nights. The confidential informant had personally bought cocaine from defendant there during early June, 1981. On three prior occasions in 1981, the confidential informant had been equipped with an electronic eavesdropping device and had attempted to buy cocaine from defendant and Ward. The confidential informant had also bought heroin on two prior occasions leading to arrests thereon. Based upon the three above-mentioned sources of information, Detective Sutton and other police officers began surveillance of 9 Benjamin Street that evening. When Detective Sutton entered the building through an unlocked front door, he saw that a mailbox read "R. Cobb". The police officers then interrupted their surveillance for 15 minutes to get coffee. Upon their return, Detective Sutton re-entered 9 Benjamin Street (through the same door) and, climbing partway up the stairs, heard defendant say, "This is good stuff — it's burning my nose", from behind a second floor apartment door. After Detective Sutton had resumed his surveillance from an unmarked car, he saw Ward coming from a brown two-door Oldsmobile car parked across the street and then enter 9 Benjamin Street. Thereafter, Ward exited carrying a pocketbook. Defendant, carrying a leather bag, followed Ward to the brown two-door Oldsmobile. After the car had gone a short distance, the police officers stopped it in front of 53 Benjamin Street and ordered defendant, who was driving, and Ward, who was in the passenger seat, to get out. As defendant and Ward were given *Miranda* warnings (as they stood outside of the car), Detective Sutton opened the leather bag, which was located on the floor of the car on the driver's side. The leather bag contained 22 individual packets of cocaine, an address book and a number of envelopes with defendant's return address written thereon. Detective Sutton also opened Ward's pocketbook, which was located on the floor of the car on the passenger's side, and found it to contain seven individual packets of cocaine and other drug paraphernalia. At the police station, when defendant was again given *Miranda* warnings, he nodded his head indicating that he understood his rights. When Detective Sutton asked defendant how much cocaine was in the packets, defendant said that he receives $60 for the large packets and $30 or whatever he can get for the small packets. Defendant was subsequently charged with two counts of criminal possession of a controlled substance in the third degree (Penal Law, § 220.16, subds 1, 12). Following a suppression hearing, the trial court ruled, *inter alia,*

that the police had probable cause to arrest defendant and that the search of the leather bag was proper. Following a jury trial, defendant was found guilty as charged and sentenced, as a predicate felon, to serve concurrent indeterminate terms of imprisonment having a minimum of 12½ years and a maximum of 25 years. This appeal by defendant ensued. Defendant contends that there should be a remittal to furnish a proper record in this case because the trial court failed to adequately state its findings concerning the confidential informant's reliability and the basis of his knowledge, thereby not complying with the requirements outlined in *People v Darden* (34 NY2d 177, 181). The People assert that any error with respect to such findings was harmless since the information provided by the confidential informant was cumulative and, therefore, not necessary to establish probable cause. In its decision on the motion to suppress, County Court stated that: "The court has conducted a *Darden* hearing and has determined that the informant in question does exist and has been identified with particularity to the satisfaction of the court." Although this finding may have satisfied the court's obligation to "make a summary report as to the existence of the informer" (*People v Darden, supra,* p 181; see, also, *People v West,* 56 AD2d 955, 956, revd on other grounds 44 NY2d 656), it was nevertheless insufficient since there was no specific finding concerning the confidential informant's reliability and the basis of his knowledge (*People v Burke,* 60 AD2d 959). Due to this deficiency in the court's finding, had the confidential informant been Detective Sutton's *only* source of information establishing probable cause, this case would have to be remitted to County Court to make more specific findings (*id.*). However, in light of Detective Sutton's *two other sources* of information and his *independent corroboration* of that information, the information provided by the confidential informant was merely cumulative and was not, in this court's opinion, necessary to establish probable cause. Accordingly, any error on the part of County Court was harmless. Defendant also contends that the trial court's findings concerning the nonconfidential informant Addison's reliability were defective. However, since Addison was not a confidential informant, the requirements of *People v Darden* (*supra*) are inapplicable. Moreover, the trial court's finding that Addison's testimony was unworthy of belief in those areas where it contradicted Detective Sutton's testimony was a proper determination of credibility by County Court which should not be disturbed (*People v Hopkins,* 86 AD2d 937, 938, affd 58 NY2d 1079; *People v Wright,* 71 AD2d 585, 586). We have examined defendant's remaining contentions and find them to be without merit. The judgment should, therefore, be affirmed. Judgment affirmed. Sweeney, J. P., Kane, Main, Mikoll and Yesawich, Jr., JJ., concur.