THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES
C. MULLEN, Appellant.

Third Department, December 14, 1989

APPEARANCES OF COUNSEL

*Lewis B. Oliver, Jr.,* for appellant.

*Sol Greenberg, District Attorney (Paul A. Clyne* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

The charge defendant stands convicted of was the sale of a quantity of cocaine to Richard Frankhouser on January 7, 1979. It was the result of a joint investigation by local, State and Federal law enforcement agencies which included both physical and electronic surveillance of defendant. An eavesdropping warrant authorizing a wiretap of defendant's home telephone was granted in December 1978.

The principal evidence against defendant consisted of several taped telephone conversations between defendant and Frankhouser from December 31, 1978 through January 7, 1979, police observations of a meeting between defendant and Frankhouser on January 7, and the testimony of Frankhouser. During the monitored telephone conversations prior to January 7, 1979, defendant was recorded telling Frankhouser that he was going to obtain quantities of cocaine, methamphetamine and marihuana for their use at social gatherings that New Year's Eve and the evening of January 6. In a January 7, 1979 conversation at about 2:00 P.M., Frankhouser apologized for not attending the party the previous night, to which defendant replied, "[t]hat's all right. I saved you a little cocoa." In a subsequent conversation that evening Frankhouser asked to buy some of the cocaine left after the previous night's party and also some methamphetamine, and defendant responded by offering to give Frankhouser the drugs, whereupon they arranged for Frankhouser to pick the drugs up at defendant's home in 15 to 20 minutes. Approximately 15 minutes later, the officer conducting physical surveillance of defendant's apartment observed Frankhouser arrive and defendant hand a small package to him. Frankhouser testified that he had known defendant for several months prior to the January 7, 1979 transaction and during that period purchased

cocaine and "crystal" (methamphetamine) from him. He confirmed the accuracy of the monitored conversations with defendant on January 7 and that his visit to defendant that evening was for the purpose of and resulted in his obtaining the drugs, cocaine or "speed" (methamphetamine) or both.[1] Frankhouser further testified that he had been a cocaine user for some 6 to 8 months before January 7, 1979, that he was familiar with the sensation experienced in snorting that drug, and that the sensation he experienced in using the substance defendant supplied him on January 7 was consistent with what he had experienced in using cocaine in the past.

Among the many points for reversal advanced on appeal by defendant is that the evidence adduced by the prosecution was insufficient, as a matter of law, to sustain the conviction. This question is in turn largely dependent on two evidentiary objections defendant makes, namely, (1) the admissibility of the previously described taped telephone conversations between defendant and Frankhouser concerning drugs to be furnished by defendant but unrelated to the January 7, 1979 sale alleged in the indictment, and (2) the admissibility and probative value of Frankhouser's testimony identifying the substance he obtained from defendant and ingested on January 7 to establish that the substance was actually cocaine. We find neither of these objections persuasive.

While it is true that the conversations concerning other drug dealings of defendant were in the nature of proof of uncharged crimes or bad acts having some tendency to show defendant's criminal propensity, we are of the view that the evidence was properly introduced as a *Molineux* exception to inadmissibility (see, *People v Molineux*, 168 NY 264). Notably in support of this conclusion, the defense strategy, as shown in defendant's opening statement and cross-examination of the People's witnesses, was that defendant never intended to sell or offer to sell cocaine to Frankhouser and that the substance he gave Frankhouser on January 7, 1979 was not cocaine or indeed any controlled substance. The tapes establishing defendant's contemporaneous dealing in cocaine and prior promises to supply Frankhouser with it were certainly probative, not merely of defendant's propensity to generally deal in cocaine, but of his intent to sell cocaine and not some harmless substance to Frankhouser on January 7. The tapes were also

---

1. Other portions of Frankhouser's testimony can be interpreted as specifically confirming that he received cocaine on January 7, 1979.

probative of his ability to carry out his January 7 offer to give Frankhouser cocaine. Moreover, given the theory of the defense and the fact that the substance defendant supplied Frankhouser was never available to police for testing and introduction at the trial, this is not a case where defendant's intent, or ability to carry out that intent, was readily inferable from the commission of the act itself, i.e., the admitted delivery by defendant of *some* substance to Frankhouser on January 7, 1979 *(cf., People v Crandall,* 67 NY2d 111). Rather, the wiretap evidence of defendant's prior drug-related acts, close in time to the offense charged, was virtually necessary to establish contested elements of the crime for which he was indicted and, thus, its probative value clearly outweighed any potential prejudice *(see, People v Alvino,* 71 NY2d 233, 242-243, 245-246). County Court properly instructed the jury on how this evidence was to be considered.

■ Nor was there any error in permitting Frankhouser's testimony tending to establish that the substance defendant gave him was actually cocaine. Essentially, Frankhouser characterized himself as an habitual user of cocaine for some 6 to 8 months prior to January 7, 1979 and described his sensations from snorting the material defendant gave him as being the same as he experienced when using cocaine previously. We think that *People v Kenny* (30 NY2d 154), heavily relied upon by defendant, does not dictate either rejection of Frankhouser's testimony or discounting its probative value in establishing the crime charged. The regrettable pervasiveness of societal cocaine abuse that has evolved since *Kenny* was decided, the clearly greater familiarity of Frankhouser with the subject drug here than that of the witness in *Kenny* and the additional evidence of defendant's damaging admissions on the tapes distinguish *Kenny* as authority against both admissibility and the value of Frankhouser's testimony to prove that the substance was cocaine. Our conclusion is amply supported by recent Federal decisions nationwide *(see, United States v Schrock,* 855 F2d 327, 334 [6th Cir]; *United States v Osgood,* 794 F2d 1087, 1095 [5th Cir], *cert denied* 479 US 994; *United States v Murray,* 753 F2d 612, 615 [7th Cir]; *United States v Harrell,* 737 F2d 971, 978 [11th Cir], *cert denied* 470 US 1027, *sub nom. Harig v United States,* 469 US 1164; *United States v Scott,* 725 F2d 43, 44-46 [4th Cir]). Cumulatively, the evidence from the tapes, Frankhouser's testimony and the police surveillance was sufficient to establish defendant's guilt beyond a reasonable doubt.

■ Nor do we find any error in County Court's instructions to the jury on the elements of criminal sale of a controlled substance. The court correctly charged that defendant's guilt could be predicated upon an offer or agreement to sell cocaine, even if an actual delivery of cocaine did not occur (Penal Law § 220.00 [1]; *People v Jones,* 63 AD2d 582, 583). Contrary to defendant's contention, County Court adequately charged specific intent in conjunction with defining sale to include an offer or agreement to sell when it further charged that the jury must also find that defendant's agreement to sell "was made *in good faith* * * * and with the *intent at the time* * * * to give Frankhouser cocaine"* (emphasis supplied) *(see, People v Pierce,* 112 AD2d 527, 529; *People v Atkinson,* 133 Misc 2d 78, 79).

■ We similarly find without merit and unneedful of extended discussion the claims that County Court committed error in conducting the hearing under *People v Darden* (34 NY2d 177) to interrogate the two confidential informants who furnished information in support of the eavesdropping warrant application, and that County Court's findings of the informants' existence, reliability and bases of knowledge were insufficient *(see, People v Cobb,* 98 AD2d 906, *cert denied* 469 US 1164). Likewise, County Court properly denied defendant's motion to compel the prosecution to produce the female companion of Frankhouser when he drove to defendant's apartment on January 7, 1979. Defendant made no showing that she was a confidential informant of the police or that she was under the prosecution's control *(see, People v Jenkins,* 41 NY2d 307, 309; *People v Goggins,* 34 NY2d 163, 169, *cert denied* 419 US 1012). We also find no basis to conclude that County Court abused its discretion in denying defendant's motion to recuse.

More serious are defendant's contentions that errors were committed in denying, without a hearing, defendant's motions to preclude and to suppress the wiretap evidence introduced in this case and in similarly denying defendant's request for a suppression hearing concerning incriminatory statements defendant made to a Federal Drug Enforcement Administration (hereinafter DEA) agent. As to the wiretaps, we agree with County Court's determination that the eavesdropping warrant was properly issued and that defendant raised no evidentiary issue requiring a hearing as to its validity. Nonetheless, the record uncontestedly discloses prima facie violations of statutory mandates concerning the sealing of the tapes of defendant's conversations "[i]mmediately upon the expiration of the

period of an eavesdropping warrant" under the direction of the issuing Justice (CPL 700.50 [2]) and barring admissibility of intercepted conversations if the prosecution fails to furnish a defendant with a copy of the authorizing eavesdropping warrant and application within 15 days after arraignment (CPL 700.70).

In the instant case, the eavesdropping warrant expired at midnight, January 9, 1979. At some undisclosed time on January 11, 1979, the police and prosecutor applied for and obtained an order for sealing and storing 32 tapes. Then, on January 17, 1979, an order was obtained modifying the prior order to reflect the sealing of 33 tapes, on the explanation that the applying officer had miscounted the number of tapes. Repeatedly, the Court of Appeals has stressed that the immediate sealing requirement of the statute must be strictly adhered to *(see, People v Winograd,* 68 NY2d 383, 394; *People v Gallina,* 66 NY2d 52, 59; *People v Basilicato,* 64 NY2d 103, 116). Although sealing tapes one day after expiration of the warrant has been allowed *(see, People v Edelstein,* 54 NY2d 306, 310), "any additional delay, if not satisfactorily explained, requires suppression" *(People v Gallina, supra,* at 59). At minimum, the delay here in sealing exceeded 24 hours from the expiration of the warrant and at least approached the two-day delay held in *Gallina* to require suppression in the absence of a satisfactory excuse. No such explanation for the delay was advanced by the People. In addition, the exact nature of the irregularity in miscounting the tapes, as to whether in fact 33 tapes were sealed under the original sealing order, required further exploration *(see, People v Basilicato, supra,* at 116).

■ The People's response to these deficiencies is that defendant failed to preserve the objection because the delay in sealing was not specifically raised in his pretrial omnibus motion or his motion to preclude and he refused to go forward with the hearing offered by the prosecution before County Court rendered a decision on his omnibus motion. We disagree. Again, the record undisputably establishes that defendant did not receive disclosure from the prosecution of the sealing orders until after the trial actually commenced, following which he made timely objections to the admissibility of the tapes. Consequently, we hold that the general challenge to the sealing procedures expressed in his omnibus motion, together with his specific objections after disclosure, adequately preserved the issue for appellate review. Moreover, defendant

can hardly be found to have waived the objection by failing to avail himself of a pretrial hearing as to the reasons, if any, for the delay in sealing the tapes when he had not yet been made aware of that discrepancy.

■ The People's failure to comply with the requirement of furnishing defendant with a copy of the eavesdropping warrant and accompanying application within 15 days after arraignment (CPL 700.70) is also firmly established by the record. In fact, 96 days elapsed from defendant's arraignment on February 26, 1980 until defense counsel received a copy of the warrant and application. County Court summarily denied defendant's motion to preclude. It based its ruling on the facts that defendant's previous counsel had moved for discovery and inspection of, *inter alia,* the eavesdropping warrant and accompanying application on March 24, 1980, that four days later the prosecution had consented in writing to inspection of those documents at the District Attorney's office, and that no motion addressed to the noncompliance with CPL 700.70 was made until defendant's present counsel moved to preclude in May 1980. County Court reasoned that the prosecution's consent to inspection constituted the "furnish[ing]" of the warrant and application required under the statute. Therefore, the court concluded, by failing to move to preclude within the requisite 45 days after the prosecution's consent to inspection *(see,* CPL 255.20 [1]), defendant waived the prosecution's tardy compliance with CPL 700.70. We disagree with County Court's basic premise that a consent to inspection of the warrant and application complies with the furnishing requirement of the statute. The Court of Appeals has made quite clear that, because "[t]he insidiousness of electronic surveillance threatens the right to be free from unjustifiable governmental intrusion into one's individual privacy * * * there must be *meticulous* adherence to the terms of the warrant and the statute pursuant to which it issued" *(People v Schulz,* 67 NY2d 144, 148-149 [emphasis supplied]). Consent to inspection at the prosecutor's office clearly is not meticulous adherence to the mandate to *furnish* the defense with a copy of the warrant and application.

■ The District Attorney in his brief on appeal does not press County Court's rationale for avoiding the effect of the prosecution's failure to furnish defendant with a copy of the eavesdropping warrant and application within 15 days after arraignment. Instead, the prosecutor relies on the language of CPL 255.20 (1) insofar as it sets a time limit on pretrial

defense motions addressed to electronic eavesdropping. That section generally imposes a time limit on defense motions to suppress of 45 days after arraignment. However, it further provides that "[i]n an action in which an eavesdropping warrant and application have been furnished pursuant to section 700.70", the period within which to move to suppress "shall be extended until forty-five days after the last date of such service" (CPL 255.20 [1]). The prosecution argues that the effect of this provision is merely to extend the 45-day period from arraignment for a defense motion for an additional 15 days, i.e., the period after arraignment within which the prosecution is required to furnish a defendant the copy of the warrant and application under CPL 700.70. Therefore, it is contended, the failure of defendant to have moved to suppress based on this objection for more than 60 days after his arraignment precluded him from later raising the issue. This argument is unavailing, since the Court of Appeals has expressly interpreted CPL 255.20 (1) to start the running of the 45-day period for a defense motion challenging eavesdropping, not from the end of the 15 days after arraignment within which the copy of the warrant and application must be furnished, but "within 45 days after the *date of service* of the eavesdropping documentation" *(People v Schulz, supra,* at 151, n 4 [emphasis supplied]). Because defendant's motion to preclude was made within 45 days of his receipt of a copy of the warrant and application, it was timely.

■ Finally, we also conclude that County Court erred in refusing defendant's request for a suppression hearing on the admissibility of defendant's postarrest statement to a DEA agent. Defendant's motion to suppress asserted that the statement was involuntary. We have held that this alone is sufficient to trigger the right of a defendant to a suppression hearing, irrespective of the facts alleged in support of the claim of involuntariness *(People v Knights,* 124 AD2d 935). County Court ruled, however, that because the People expressly disclaimed any intention to use the statement at the trial except for impeachment purposes should defendant choose to testify, it was incumbent upon defendant to particularize whether the involuntariness claim was entirely based on a violation of defendant's *Miranda* rights (in which case the statement could be used for impeachment *[People v Padron,* 134 AD2d 625, *lv denied* 71 NY2d 900]), or was based on psychological or physical coercion (in which case no use could be made of the statement *[supra]*). Because County Court

interpreted defendant's response as a refusal to thus detail the factual basis for his claim that the statement was involuntary, it concluded that no hearing was necessary. This was error. First, as we held in *People v Knights (supra)*, when a defendant moves for suppression of a statement on the ground of involuntariness, the statute (CPL 710.60 [3] [b]) simply does not permit summary denial of the motion because of a defendant's failure of particularization of the factual basis for the claim. Thus, in the context of the prosecution's intended use of a statement solely to impeach, a hearing is required unless the defendant expressly concedes that his motion to suppress is based solely on a violation of defendant's *Miranda* rights. In any event, defense counsel's response to County Court's inquiry was sufficient to indicate an appropriate basis for challenging the use of the statement for impeachment in representing that "[t]here is a contention that there were threats and promises".

■ The only remaining question is whether the errors in overruling defendant's motions to suppress the wiretap evidence and defendant's statement without a hearing require reversal and a new trial at this juncture. Regarding defendant's admissions to the DEA agent, the proper disposition is to withhold determination and remit for a suppression hearing on the issue of involuntariness *(see, People v Knights, supra,* at 936). In our view, it is likewise appropriate to withhold decision and remit for a hearing to determine whether the People have a satisfactory explanation for the apparent failure to comply with the statutory requirements for immediate sealing of the eavesdropping tapes (CPL 700.50 [2]) and whether there was "good cause" for the failure to timely furnish the defense with a copy of the eavesdropping warrant and accompanying application (CPL 700.70).[2] We note in this regard that, prior to County Court's summary denial of defendant's motions to suppress and preclude, the prosecution expressed its readiness to go forward with the hearing and, at least with respect to the failure to timely furnish a copy of the eavesdropping warrant and application, the District Attorney set forth some factual explanation for the delay in his papers in opposition to defendant's motion. Thus, it would appear

2. We do not read *People v Schulz* (67 NY2d 144) to require that in all cases the issue of the prosecution's good cause for delay in furnishing a copy of the eavesdropping warrant and application can only be considered in conjunction with a motion to extend the period made within 15 days after arraignment.

that because of County Court's erroneous rulings, the People were deprived of one full opportunity to present evidence which may have been sufficient to sustain admissibility of the wiretap evidence despite noncompliance with the statutory mandates. For this reason, we conclude that the proper remedy is to withhold decision and remit for a prompt hearing, rather than to reverse *(see, People v Crandall,* 69 NY2d 459, 466-467).

MAHONEY, P. J., KANE, CASEY and MERCURE, JJ., concur.

Decision withheld, and matter remitted to the County Court of Albany County for further proceedings not inconsistent with this court's decision.