◼ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVOR GOMCIN, Respondent. [697 NYS2d 93] —Appeal by the People from an order of the Supreme Court, Queens County (Schulman, J.), dated October 29, 1997, which, after a hearing, granted those branches of the defendant's omnibus motion which were to suppress a gun and a quantity of cocaine recovered from his person pursuant to a search incident to his arrest.

Ordered that the order is affirmed.

On the evening of January 31, 1997, and early morning of February 1, 1997, Detective Anthony Lemonaca was assigned as backup to an undercover police officer who was attempting to buy controlled substances at a social club. There is no evidence in the record that the undercover officer was able to achieve that objective. However, at 8:00 P.M., the undercover officer advised Detective Lemonaca by radio transmission that a tall white male with a pony tail approached her inside the social club and asked her "if she wanted to take a hit of cocaine". The undercover officer referred to the subject as "JD Tan".

We do not know whether the undercover officer and "JD Tan" engaged in any additional conversation, nor is there any other information in the record as to the context in which this statement was made.

Approximately six hours after the defendant asked the undercover officer if she wanted a "hit" of cocaine, the undercover officer left the social club, and Detective Lemonaca and other police officers arrived at the social club. The police directed its occupants to leave, and "stopped" and searched the defendant and "everybody when they came out". Detective Lemonaca recovered a packet of cocaine from the defendant's jacket pocket and a .38 caliber automatic gun from the defendant's boot.

It is unclear from the record whether the defendant was arrested before or after the search. Our dissenting colleague's conclusion that the defendant was "the first of seven patrons to be arrested and searched", is based upon a statement of the

defendant's attorney made upon "information and belief" during colloquy. During subsequent colloquy, the defense counsel stated, also "on information and belief", that the undercover officer was a "very beautiful" woman, and that the defendant "could have been just trying to pick her up". Clearly, neither of these representations constituted evidence.

After a hearing, the court suppressed the gun and cocaine recovered from the defendant's person. In so doing, the hearing court did not dispute the veracity of Detective Lemonaca, or his right to rely on hearsay information provided by the undercover officer. Rather, the court found that the defendant's statement to the undercover officer was merely an inquiry into the undercover officer's "wishes and desires", not evidence of a crime.

We do not dispute that Detective Lemonaca was a trained and experienced narcotics officer, who was entitled to rely upon information provided by an undercover officer who was part of his team. In view of Detective Lemonaca's candid admission that the police searched "everybody when they came out" of the social club "prior to any confirmation from the undercover", it appears that the search of the defendant was not motivated by the detective's training or experience, or even upon the specific information provided by the undercover officer. Such wholesale searches, in violation of the probable cause requirement, have been universally condemned (*see, Davis v Mississippi,* 394 US 721; *People v Scott,* 79 NY2d 474, 501; *People v Sanchez,* 38 NY2d 72). The Supreme Court of the United States has held that, in general, the legality of a search or seizure is to be measured by the objective circumstances, and not the subjective motivation of the officer (*see, Whren v United States,* 517 US 806; *People v McCoy,* 239 AD2d 437). Further, the question of whether the search occurred minutes before or minutes after the arrest is generally immaterial (*see, People v Evans,* 43 NY2d 160; *People v Valenzuela,* 226 AD2d 154). Thus, even if the information provided by the undercover officer was not the motivation for the search and/or arrest of the defendant, the question of whether the information provided by the undercover officer was sufficient to provide probable cause to arrest the defendant is still relevant to our inquiry.

We recognize that Detective Lemonaca was entitled to rely upon information provided by the undercover officer, and that the undercover officer was not required to testify at the hearing. However, Detective Lemonaca's bare-bones recitation of the information provided by the undercover officer was wholly inadequate to provide probable cause to arrest. Since we do not

know whether the undercover officer and the defendant engaged in additional conversation, we do not know the context in which the defendant purportedly asked her if she wanted a "hit" of cocaine. There is no basis in the record for our dissenting colleagues' conclusion that "the defendant had approached the undercover officer * * * and *immediately offered* her a hit of cocaine".

The crime of criminal sale of a controlled substance may be predicated upon an offer or agreement to sell cocaine, even if an actual delivery of cocaine did not occur (*see, People v Mullen,* 152 AD2d 260, 266). However, not every casual offer is made criminal. To constitute a sale, there must be evidence to indicate an ability and intent on the part of the defendant to complete the transaction (*see, People v Mike,* 92 NY2d 996). A promise to deliver drugs at some point in the "near future" is insufficient, as a matter of law, to constitute a sale (*see, People v McGruder,* 63 AD2d 947).

Our dissenting colleagues argue that the defendant clearly had the ability to deliver cocaine, since cocaine was found on his person. However, it is beyond cavil that the fruit of a search incident to an arrest cannot be used to establish probable cause to arrest (*see, Smith v Ohio,* 494 US 541). As the Supreme Court of the United States held over 50 years ago, reasoning which would "justify the arrest by the search and at the same time justify the search by the arrest * * * will not do" (*Johnson v United States,* 333 US 10, 16-17).

In the instant case, there is no evidence that the undercover officer saw anything that appeared to be cocaine, or had any reason to believe that the defendant possessed cocaine. Nor was there evidence that the defendant had the ability or intent to complete an exchange of cocaine from himself or any other person. There was no evidence of a prior relationship between the defendant and the undercover officer. Therefore, no inferences could be drawn as to the particulars of any future delivery (*cf., People v Mullen, supra*).

As noted by the Supreme Court, a reasonable inference was that the defendant's statement to the undercover officer was merely an inquiry into her "wishes and desires". The defendant's statement was made in a social club, where casual conversation is rampant. The defendant may have been attempting to strike up a conversation with a female. Conduct which falls within the statutory definition of a sale of cocaine constitutes a crime, whatever the defendant's motive, but casual conversation does not (*see, People v Mike, supra*).

A finding of probable cause to arrest does not require proof

beyond a reasonable doubt. However, there must be reasonable cause to believe that a crime was or is being committed, and the defendant committed the crime. Conduct which is, at most, equivocal and suspicious, is not sufficient to establish probable cause to arrest (*see, People v Davis,* 36 NY2d 280, 282, *cert denied* 423 US 876).

Accordingly, the order suppressing the physical evidence recovered from the defendant's person is affirmed. Joy, Goldstein and McGinity, JJ., concur.

Sullivan, J., dissents, and votes to reverse the order appealed from and deny those branches of the defendant's omnibus motion which were to suppress a gun and cocaine recovered from his person pursuant to a search incident to his arrest with the following memorandum, with which Bracken, J. P., concurs. Inasmuch as I find that the police had ample probable cause to place the defendant under arrest for the completed offense of criminal sale of a controlled substance, I would reverse the hearing court's order suppressing the gun and narcotics recovered from the defendant's person during a search incident to that lawful arrest.

The relevant facts are not in dispute. By Queens County Indictment No. 339/97, the defendant was charged with criminal possession of a weapon in the third degree and criminal possession of a controlled substance in the third degree based on the recovery of a handgun and a quantity of cocaine from his person by the police during the early morning hours of February 1, 1997. At the ensuing Mapp/Dunaway hearing held on October 29, 1997, the People presented Detective Anthony Lemonaca as a witness. On the date of the defendant's arrest, Detective Lemonaca, who had been assigned to the Queens Narcotics Division for five years, was working in conjunction with undercover officer No. 25704 on a "case buy", an operation in which contraband is sought to be purchased at a particular location. Detective Lemonaca was assigned to back up the undercover officer while she worked inside a social club located at 64-01 Broadway in Elmhurst, Queens. At approximately 8:00 P.M., the undercover officer advised Detective Lemonaca by radio that a tall white male with a ponytail had approached her inside the location and asked if she wanted "a hit" of cocaine. The undercover officer assigned the code name "JD Tan" to this individual. After the undercover left the club at approximately 1:45 A.M., Detective Lemonaca responded to the location and ordered the occupants out. Detective Lemonaca observed that the defendant closely matched the description broadcast by the undercover officer, in that he was a tall white

male with a ponytail and was wearing brown pants, a brown jacket, and black boots. Indeed, there were no other persons resembling the description at that location. According to Detective Lemonaca, the defendant was under arrest as soon as he exited the social club. Upon searching the defendant's person, Detective Lemonaca recovered a packet of cocaine from his jacket pocket and a .38 caliber revolver from inside his boot.

At the close of evidence, the defendant's counsel argued, *inter alia*, that the police lacked probable cause to search the defendant because he had committed no crime but, at worst, had suggested "the possibility of a future crime". Conversely, the prosecutor claimed that the defendant's conduct constituted an offer to give or sell cocaine to the undercover officer, which qualified as a sale of narcotics under the Penal Law and thereby provided the police with probable cause to arrest and search the defendant.

Although the hearing court credited the testimony of Detective Lemonaca and expressly found that the defendant so closely matched the transmitted description as to give the police probable cause to believe that the defendant was the person who approached the undercover officer, the court nevertheless suppressed the drugs and weapon seized from the defendant as the fruit of an unlawful search. The court suggested that the defendant's offer of cocaine to the undercover officer constituted a mere inquiry into the undercover officer's "wishes and desires" rather than a crime. Moreover, after erroneously indicating that there was an eight-hour lapse between the undercover officer's transmission at approximately 8:00 P.M. and the arrest and search of the defendant at approximately 1:45 A.M., the court reasoned that any probable cause to believe that the defendant possessed cocaine at the time he spoke to the undercover officer had dissipated by the time of his arrest. In an order dated October 29, 1997, the court granted suppression. I would reverse.

The hearing court erroneously framed the issue solely as whether the police still had viable probable cause to search the defendant at 1:45 A.M. based upon their belief that he had possessed cocaine approximately six hours earlier. However, the true issue presented at the hearing was whether the police had continuing probable cause to arrest the defendant for a sale of cocaine which was completed at the time of his encounter with the undercover officer, and to search him incident to that arrest. I conclude that they did.

A finding of probable cause to arrest does not require proof beyond a reasonable doubt (*see, People v McRay,* 51 NY2d 594;

*People v Dawkins,* 163 AD2d 322). Rather "[p]robable cause requires the existence of facts and circumstances which, when viewed together, would lead a reasonable person, possessing the same expertise as the arresting officer, to conclude that an offense has been or is being committed and that the person to be arrested is the perpetrator thereof" (*People v Javier,* 175 AD2d 182; *see, People v Bigelow,* 66 NY2d 417; *People v Mc-Ray, supra*). "The legal conclusion is to be made after considering all of the facts and circumstances together" (*People v Bigelow, supra,* at 423). Of course, where an individual engages in purely equivocal conduct which supports equally plausible criminal and non-criminal explanations, probable cause is not made out (*see, People v Davis,* 36 NY2d 280, *cert denied* 423 US 876). Instead, "[i]n passing on whether there was probable cause for an arrest * * * the basis for such a belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator, for conduct equally compatible with guilt or innocence will not suffice" (*People v Carrasquillo,* 54 NY2d 248, 254).

Here, experienced narcotics officers were conducting a "case buy" operation at this specific social club location. The "sole objective" and "anticipated intended outcome" of the operation was to purchase contraband, and each officer "had a prearranged role" (*People v Ketcham,* 93 NY2d 416, 422). When Detective Lemonaca was advised by the undercover officer that an individual later determined to be the defendant had approached the undercover officer and asked her if she "wanted to take a hit of cocaine", Detective Lemonaca clearly possessed probable cause to believe that a crime had been committed. Indeed, there can be no question that Detective Lemonaca was entitled to rely upon the communication he received from the undercover since, under the fellow officer rule, "[i]nformation received from another police officer is presumptively reliable" (*People v Ketcham, supra,* at 420; *see, People v Landy,* 59 NY2d 369). Moreover, "[w]hen * * * the hearsay informant is a police officer who imparts to fellow officers information gathered while personally participating in or observing an undercover drug transaction, there is little doubt as to the reliability of the informant or the basis of knowledge" (*People v Ketcham, supra,* at 420). Hence, as the recent decision of the Court of Appeals in *People v Ketcham* (*supra*) makes clear, since the informant herein was an undercover police officer who advised a member of her team of conduct by the defendant which had been directed at her personally, the requisite criteria of reliability and basis of knowledge were amply satisfied, and there was no

requirement that the undercover officer testify at the suppression hearing.

Detective Lemonaca also was entitled to evaluate the information he received in his role as a trained, experienced narcotics officer, since "[t]he police are allowed to draw upon the entirety of their experience and knowledge in deciding the existence of probable cause" (*People v Brown,* 151 AD2d 199, 203), and the courts are likewise required to evaluate the reasonableness of an arrest in the context of the expertise possessed by the officers (*see, People v Alexander,* 218 AD2d 284; *People v Goggans,* 155 AD2d 689).

Viewed in this light, it clearly and reasonably appeared more probable than not to the officers that when the defendant asked the undercover officer if she wanted "a hit" of cocaine, he was offering her an immediate opportunity to ingest the drug. Even if we were to find the reference to "a hit" to be ambiguous, it is well settled that "[a]mbiguous conversations may * * * serve as a basis for finding probable cause when they have been given a reasonable interpretation by an experienced investigator" (*People v Baker,* 174 AD2d 815, 816-817; *see, People v Tambe,* 71 NY2d 492; *see, e.g., People v Quinn,* 185 AD2d 288 [where the term "a hit" was understood by both the undercover officer and the defendant to refer to a single dose of an illegal drug]).

Accordingly, the officers had probable cause to believe that the defendant's conduct constituted criminal sale of a controlled substance, inasmuch as the Penal Law defines the term "sell" as "to sell, exchange, give or dispose of to another, *or to offer* or agree *to do the same*" (Penal Law § 220.00 [1]; emphasis supplied). No exchange of money is necessary for such a "sale", since "[t]he legal definition of 'sell' includes the common definition of 'sell', and encompasses additional conduct, such as 'exchanging' or 'giving', that does not fall within the common definition" (*People v Hardy,* 241 AD2d 919). Thus, the possibility that the defendant may have offered the undercover officer "a hit" of cocaine in order to "pick her up" is irrelevant, since such conduct still falls within the statutory definition of a "sale". The breadth of this definition is no accident. As the Court of Appeals has observed, "[b]y enacting a broad definition of the term 'sell' to embrace the acts of giving or disposing of drugs, the Legislature has evinced a clear intent to 'include any form of transfer of a controlled substance from one person to another' (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law art 220, at 14). The statutory definition of that term conspicuously excludes any requirement

that the transfer be commercial in nature or conducted for a particular type of benefit or underlying purpose (*see, People v Lam Lek Chong,* 45 NY2d 64, 72)" (*People v Starling,* 85 NY2d 509, 514). Moreover, actual possession of the drug is not a necessary element of the offense of criminal sale of a controlled substance (*see, People v White,* 172 AD2d 790; *People v Gaviria,* 148 AD2d 630; *People v Cogle,* 94 AD2d 158), and, of course, there is no requirement that an actual transfer of the drug occur, since a mere offer is sufficient (*see, People v Mullen,* 152 AD2d 260, 266 [guilt of a criminal sale of a controlled substance may "be predicated upon an offer or agreement to sell cocaine, even if an actual delivery of cocaine did not occur"]; *People v Scarincio,* 95 AD2d 967, 969 ["one may be found guilty of criminal sale of a controlled substance by offering or agreeing to sell a narcotic drug without at the same time possessing any narcotic drug"]).

The majority mistakenly relies upon *People v Mike* (92 NY2d 996) and *People v McGruder* (63 AD2d 947) to support its assertion that no probable cause to arrest existed in this case. Those decisions discuss the quantum of proof necessary to support a verdict of guilt beyond a reasonable doubt of criminal sale of a controlled substance after trial; neither engages in an analysis of what constitutes probable cause to arrest a person for that offense. Hence, in *People v Mike* (*supra*), the Court of Appeals held that "in order to support a conviction" of criminal sale of a controlled substance, "there must be evidence * * * that defendant had both the intent and the ability to proceed with the sale" (*People v Mike, supra,* at 998). The Court of Appeals determined in that case that the evidence was insufficient to establish that the defendant, who offered to sell drugs to the police, had the ability to carry out the sale since, unlike the situation in the case before us, he did not possess any drugs at the time of his arrest and there was no evidence that he had access to a source of drugs. Similarly, in *People v McGruder* (*supra*), the Appellate Division, First Department, determined that a vague promise to obtain an unspecified amount of a drug at some unidentified and unknown point in the future could not support a conviction of criminal sale of a controlled substance beyond a reasonable doubt. However, in the case before us, we are not concerned with whether the hearing evidence was legally sufficient to convict the defendant of a drug sale beyond a reasonable doubt (although that evidence, including the recovery of cocaine from the defendant's person, is far more compelling here than was the trial evidence in either *People v Mike* [*supra*] or *People v McGruder* [*supra*]). Rather, we must decide the discrete preliminary issue of whether the

police, confronted with the circumstances as they unfolded, could reasonably believe it more probable than not that the crime occurred. Since the trained and experienced narcotics officers knew that the defendant had approached an undercover officer at a known drug location and immediately offered her "a hit" of cocaine, that question should be answered in the affirmative.

Hence, far from suggesting any innocent explanation, the defendant's conduct satisfied the statutory elements of criminal sale of a controlled substance (see, Penal Law § 220.39). When evaluated in light of the training and experience of the narcotics officers and the attendant circumstances, including the purpose for which the officers were present at the location, that conduct clearly provided the police with probable cause to believe that the defendant had committed a crime. As such, I conclude that the subsequent arrest of the defendant was lawful, and that the drugs and weapon recovered from his person during the search incident to that arrest should not have been suppressed.

Finally, the majority's assertion that the search of the defendant was part of an illegal "wholesale" search of all of the social club patrons is totally without support in the record. The hearing record demonstrates that the defendant was the first patron to exit the location and the first of seven patrons to be arrested and searched, although the hearing court properly precluded inquiry into the basis for the other arrests as being irrelevant to this case. Indeed, regardless of the motivation for the other arrests and searches, Detective Lemonaca testified unequivocally as to the specific, concrete factual basis for the arrest and search of *this defendant*. Hence, the suggestion that the defendant was searched as part of some unlawful blanket police procedure is not only completely speculative, but belied by the uncontroverted testimony at the hearing. Under these circumstances, even the hearing court recognized that whatever happened to the other social club patrons "ha[s] no bearing on this case".