[726 NYS2d 71]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODNEY SAMUELS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD HENDERSON, Appellant.

First Department, May 22, 2001

## APPEARANCES OF COUNSEL

*Donald J. Siewert* of counsel (*Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Lisa Joy Robertson* of counsel (*Robert S. Dean,* attorney), for Rodney Samuels, appellant.

*Ellen Dille* of counsel (*M. Sue Wycoff,* attorney), for Edward Henderson, appellant.

## OPINION OF THE COURT

FRIEDMAN, J.

In *People v Mike* (92 NY2d 996), the Court of Appeals held that a conviction of criminal sale of a controlled substance premised upon an "offering for sale" theory (*see*, Penal Law § 220.00 [1]) must be supported by evidence of a bona fide offer to sell, which means that the evidence must show that the defendant had both the intent and the ability to proceed with the sale. In this criminal action, defendants, pointing to *Mike*, assert that the evidence supporting their convictions was insufficient because no drugs were recovered by the police upon their arrest. They also claim that the court erred in failing to specifically instruct the jury that it could convict defendants only if it found that defendants had both the intent and ability to proceed with the sale. We disagree with both of these contentions and accordingly affirm the respective convictions.

This case originates from community complaints received by the New York City Police Department regarding drug sales on

West 144th Street between Amsterdam Avenue and Broadway in Manhattan. In response, an undercover buy-and-bust operation was organized for the afternoon of April 24, 1998, in which undercover officer 24102 (UC 24102) would attempt to purchase drugs at the location, a location where he had previously purchased crack cocaine.

On that day, UC 24102 approached a group of individuals gathered in front of 517 West 144th Street and, using the street term for crack, asked "where [he could] get some cooka." Defendant Rodney Samuels asked UC 24102 what he was looking for, to which UC 24102 responded "four nicks" ($5 bags). Samuels told him he only had "dimes" ($10 bags). UC 24102 ordered two dimes.

Samuels told UC 24102 to walk with him, which he did. Samuels then asked UC 24102 if he was a police officer, a confidential informant, an FBI agent or a drug enforcement agent. The officer denied being any of these.

After this exchange, Samuels told UC 24102 to wait. Samuels approached a white Mustang, which was in front of them, and began talking to defendant Edward Henderson, who was seated in the driver's seat. While this conversation was taking place, a third man, Vernon Price, exited from the passenger seat of the car and approached UC 24102 to look him over.

After Samuels finished speaking to Henderson, Samuels returned to UC 24102 and directed him to speak to Henderson. UC 24102 then asked Henderson for two dimes. Henderson said "twenty dollars" and told the officer, "Let me get the money and then let me get the stuff * * * I'm not going anywhere. I'm parked right here." Expecting to receive two dimes, UC 24102 handed Henderson $20 of prerecorded buy money.

Instead of turning over the crack, Henderson held out a crack pipe and told the officer "to take a hit," that is to smoke crack from the pipe. UC 24102 observed that in the pipe there was a small rock, off-white in color, which, from his experience, appeared to be crack. In accordance with the policy of the Police Department covering this situation, UC 24102 refused the request stating "noh, noh, just give me my dimes." Henderson replied, "you'll get it as soon as you take a hit so I know you're not a cop." UC 24102 then told Henderson to give him the crack that he was purchasing or to give back the $20. At this point the third man, Price, returned to the car and conversed with Henderson, who handed something to Price. Price exited the car and returned to UC 24102, holding out a crack pipe and telling him to take a hit. UC 24102 again demanded the

two dimes of crack or his money, but Price insisted, "no, take a hit you'll get the stuff as soon as you take a hit!"

A second undercover officer (the ghost), observing these events from 50 feet away, became concerned for the safety of UC 24102 because of the length of time it was taking to complete the transaction. Accordingly, the ghost radioed backup officers to "move in." Moments later, the backup team arrived at the scene.

Although Henderson and the third man, Price, were arrested almost immediately, Samuels had begun walking away from the location just before the backup team arrived. The ghost, however, kept Samuels under constant surveillance, except for a few brief moments when Samuels turned the corner. As a result of a transmission radioed by the ghost, Samuels was arrested a few blocks away.

Immediately after securing the arrest location, the officers conducted a search. They were unable, however, to locate the crack pipe, the prerecorded buy money, or any drugs.*

Based upon this factual scenario, defendants were each indicted, and subsequently tried, for criminal sale of a controlled substance in the third degree. At the trial, the People sought a conviction premised upon an "offering for sale" theory, asserting that, since defendants made a bona fide offer to sell crack cocaine, the elements of the crime charged had been established.

After both the People and the defense rested, defendants moved for a trial order of dismissal, alleging that, since no drugs were recovered by the police, a conviction of criminal sale of a controlled substance in the third degree could not be sustained. Supreme Court denied the motion.

In light of the court's ruling, defendants requested that the court instruct the jury as follows: "[I]n order to support a conviction under an offer to sell theory, there must be evidence of a bona fide offer to sell, that the defendants have the intent and ability to proceed with the sale." This request was denied. Both defendants were convicted and this appeal, which concerns the propriety of these rulings, ensued.

---

\* Although there was no contraband admitted at trial, in actuality a packet of crack was recovered from Price. Supreme Court, however, ruled *in limine* that this evidence should be excluded. The court reasoned that, since the Grand Jury did not indict Price for selling crack, this necessarily included a finding that the crack recovered from him was not the subject of the transaction. Regardless of whether this ruling was correct, we are bound by the evidence presented at trial.

■ A person is guilty of criminal sale of a controlled substance in the third degree, *inter alia,* when he knowingly and unlawfully sells a narcotic drug (Penal Law § 220.39 [1]). The term "sell" is broadly defined and means "to sell, exchange, give or dispose of to another, or *to offer or agree to do the same*" (Penal Law § 220.00 [1] [emphasis added]). It is because of the latter part of the statutory definition that liability for this crime may attach even where the transaction has not been consummated (*see, People v Mike, supra* at 998; *People v Redden,* 181 AD2d 1016, *lv denied* 79 NY2d 1053; *People v Mullen,* 152 AD2d 260). It also flows from the statutory definition that, if the defendant made a bona fide offer to sell drugs, a conviction may be had without proof of possession of the contraband (*see, People v Mike, supra; People v Gondolfo,* 94 Misc 2d 696). While defendants do not dispute these general principles of law, they claim that reversal of their convictions is nevertheless mandated by the Court of Appeals decision in *People v Mike (supra).*

In *Mike,* the defendant approached two off-duty officers and inquired whether they were interested in buying an unspecified type and quantity of drugs. After a brief discussion in which the officers agreed to buy a $20 bag of cocaine, the defendant got into the officers' car and led them to the driveway of a building. The defendant told the officers to give him the money, and he would go into the building to obtain the drugs. Because the money belonged to one of the officers, and he was fearful that the defendant would abscond with it, the transaction was aborted and the defendant was arrested. The Court held that, "in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—i.e., that defendant had both the intent and the ability to proceed with the sale" (*id.* at 998). The Court also concluded that the People failed to establish the defendant's ability to carry out the transaction, noting:

> "Defendant did not possess any money or drugs at the time of his arrest and there was no evidence that he had previously sold drugs to the officers or anyone else. Although defendant did later give an oral statement indicating he intended to sell cocaine to the officers, he made no reference to a source of drugs or prior drug sales at the building in question. There was no evidence that there were drugs in the building at the time of defendant's arrest, or even that the building was a known drug location" (*id.*).

Defendants read *Mike* as holding that a defendant's intent and ability to carry out a drug transaction can only be demonstrated if either drugs are recovered or, at the very least, there is evidence of prior, consummated drug sales. In support of their interpretation, defendants point out that, in the reported cases sustaining a conviction on an "offering for sale" theory, it appears the police either recovered drugs (*see, e.g., People v Simmons*, 256 AD2d 90, *lv denied* 93 NY2d 857; *People v Boyd*, 244 AD2d 230, *lv denied* 91 NY2d 924; *People v Rodriguez*, 184 AD2d 439, *lv denied* 80 NY2d 909; *People v McGrath*, 115 AD2d 128) or there was evidence of prior transactions in which drugs were actually transferred (*see, e.g., People v Flores*, 196 AD2d 882, *affd* 84 NY2d 957; *People v Mullen*, 152 AD2d 260). Juxtaposing these cases with *Mike*, defendants assert that the absence of such evidence here requires a reversal of their convictions. We disagree.

With regard to the issue of intent, defendants' analysis suffers from a fundamental flaw. Close scrutiny of *Mike* reveals that the Court of Appeals did not address the sufficiency of the People's evidence on the element of intent. Rather, the Court only held that "the evidence was insufficient to establish that defendant had the *ability* to carry out the sale" (*id.* at 999 [emphasis added]).

Bearing this in mind, it is apparent that *Mike* did not impose a judicial gloss on the usual method by which the People may prove a defendant's intent in this type of prosecution. As always, a defendant's intent is the product of the invisible operation of his mind. Hence, as in any other case, the law permits the People to establish a defendant's intent, *inter alia*, by what he "said verbally either before, during or even after the commission of the crime" (CJI 9.31; *cf., People v Guidice*, 83 NY2d 630, 636 [a defendant's admission as to his intent constitutes direct evidence of guilt]).

Here, of course, defendants' statements made during the transaction amply demonstrated that they intended to sell crack since they explicitly stated that this was their intention. Moreover, if their statements were not enough, their conduct, which, as explained at trial, evinced all of the earmarks of an organized street-level drug-selling operation, left no doubt that they intended to sell crack.

This brings us to the issue of defendants' ability to carry out their stated intention. In *Mike*, the Court indicated that, beyond the defendant's own statements during the failed transaction, the record was barren of any evidence regarding his ability to carry out the sale. Arguably this observation supports

defendants' contention that some additional evidence, beyond their own statements, is necessary to establish this element of the crime. We find it unnecessary, however, to reach this issue. Assuming defendants' interpretation to be accurate, there is nothing in *Mike* to suggest that such additional evidence must take the form of either recovered contraband or prior consummated drug sales.

Once again, as in all cases, the People's proof may consist of either direct evidence, such as where the drugs are actually recovered (*see, People v Simmons, supra; People v Boyd, supra; People v Rodriguez, supra; People v McGrath, supra*), or circumstantial evidence, such as where the People rely upon prior transactions in which the defendant was able to provide the drugs as he promised (*see, People v Flores, supra; People v Mullen, supra*). Where the proof offered is circumstantial, there is no basis in policy, logic, or law for limiting that proof to any particular genre of evidence, as defendants suggest. Rather, the evidence sufficient to demonstrate ability may take many forms, depending upon the particular factual variants of a given case.

Here, the officer was asked more than once to take a hit from a crack pipe; the officer saw that the pipe contained a substance that, from his experience, appeared to be crack; defendants received money from the officer for the crack; defendants' conduct had all of the earmarks of a street-level drug-selling operation; and, the place where the transaction occurred was a known drug-selling location where the undercover officer had previously purchased drugs.

The congruence of these facts was certainly sufficient to permit a jury to infer that defendants had the ability to carry out the sale. After all, it is by no means speculative to conclude that, where people have so carefully conducted themselves in the organized methods of street-level drug dealers, they have done so because they are in fact selling drugs. It follows that the evidence was sufficient to demonstrate that defendants had the ability to procure the small amount of crack they agreed to sell.

In reaching this conclusion, we do not imply that the factual circumstances present here are always required in order to obtain a conviction in an "offering for sale" case in which drugs are not recovered. Because the factual variations are myriad, each case must stand or fall with reference to its own unique facts. Suffice it to say that the People met their burden in this case.

■ Turning to defendants' claim regarding the adequacy of

the court's charge, Supreme Court instructed the jury that a conviction could only ensue if the jury determined, beyond a reasonable doubt, that defendants knowingly and unlawfully sold crack to UC 24102. The court then read the statutory definition of the word "sell" as set forth in Penal Law § 220.00 (1), which, as previously indicated, includes an offer to sell crack. The court also explained that "[a] person knowingly sells cocaine when that person is aware that he is selling cocaine." Finally, the court instructed the jury that "[p]articipation [in a crime] is intentional if it is done voluntarily and purposely and with the specific intent to do some act that the law forbids."

In assessing the adequacy of these instructions, " '[t]he test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision' " (*People v Ladd*, 89 NY2d 893, 895, quoting *People v Russell*, 266 NY 147, 153). We find that the court's charge in this case was adequate.

Initially, the charge specifically instructed the jury that intent was an essential element of the crime, explaining that defendants had to have acted "knowingly," "purposely," "voluntarily," and with "specific intent." While defendants suggested a different phraseology, the court was not obligated to adopt that suggestion since it was already explaining the element of intent in such clear and unmistakable language. Contrary to the assertion of the dissent, *People v Mullen* (152 AD2d 260) does not call for a different conclusion.

In *Mullen*, the Appellate Division, Third Department, held that the trial court's charge on specific intent was sufficient where it charged the jury that the agreement to sell "was made *in good faith* * * * and with *intent at the time*" to sell cocaine (*id.* at 266). We fail to perceive (and no explanation is offered) as to how this language provides any more guidance on the issue of intent than the language used by the court in this case.

Next, the charge, when viewed as a whole, adequately alerted the jury that defendants' "ability" to proceed with the transaction was a necessary predicate for conviction. Simply stated, the concept of "ability" was necessarily subsumed in the various aspects of the charge, i.e., that defendants be "aware that [they were] selling cocaine," and that they did so "knowingly." No further elaboration was therefore required.

We also find it significant that there was no possibility of juror confusion as the issues presented to the jury for consideration were well defined and sharply targeted by the parties with reference to the trial evidence (*cf., People v Morant*, 253 AD2d 691, *lv denied* 92 NY2d 984; *People v Ross*, 214 AD2d

304). In this regard, the jury was asked to determine whether the defendants were conducting a street-level drug-selling operation, as the People contended, or were merely playing a practical joke on the undercover officer to taunt him, as defendants contended.

Finally, we reject defendants' contention that *Mike* requires any particular phraseology when instructing a jury in an "offering for sale" case. *Mike* concerned the legal sufficiency of evidence presented at a bench trial, not the sufficiency of a jury charge.

Accordingly, the judgments of the Supreme Court, New York County (Laura Visitacion-Lewis, J.), rendered May 5, 1999 and March 24, 1999, respectively, convicting each defendant, after a joint jury trial, of criminal sale of a controlled substance in the third degree, and sentencing defendant Samuels, as a second felony offender, to a term of 4½ to 9 years, and sentencing defendant Henderson, as a second felony offender, to a term of 5 to 10 years, should be affirmed.

ROSENBERGER, J. (dissenting). I dissent and would reverse the judgment of conviction, remanding the matter for a new trial.

I do not differ with the majority's conclusion that the evidence presented was sufficient to sustain a conviction. Were that the only question presented, I would have no reason to differ. There is, however, more.

In *People v Mike* (92 NY2d 996, 998), the Court of Appeals acknowledged that "[a] conviction for criminal sale does not require that an actual sale be consummated; under Penal Law § 220.00 (1), a 'sale' includes an offer to sell or exchange." It is on this proposition that the majority relies in finding the charge to have been adequate. The next sentence of the *Mike* opinion reads:

> "However, in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—i.e., that defendant had both the intent and the ability to proceed with the sale (*see, People v Gondolfo,* 94 Misc 2d 696, 702 [Alexander, J.] ['not every casual offer is made criminal but where a defendant has made a bona fide offer or agreement to sell and there is sufficient evidence to indicate an ability and intent on the part of the defendant to complete the transaction, a conviction for sale may be obtained without proof of possession of the contraband.'] * * *)." (*Id.* at 998-999.)

Defense counsel, after unsuccessfully arguing that *People v Mike* required the granting of his motion to dismiss the indictment, requested that the trial court instruct the jury, in accord with the criteria set forth in *Mike,* that in order to support a conviction, there must be evidence of a bona fide offer to sell, namely, the intent and ability to proceed with the sale. The court denied this request, holding that these were simply matters of credibility for the jury and not a legal standard.

When the Court of Appeals has set forth elements necessary to convict of crimes, it cannot be said that those elements are merely a matter of credibility. In its charge "[t]he court must * * * state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts." (CPL 300.10 [2].)

In *People v Mullen* (152 AD2d 260, 266), the Third Department held that the "County Court adequately charged specific intent in conjunction with defining sale to include an offer or agreement to sell when it further charged that the jury must also find that defendant's agreement to sell 'was made *in good faith* * * * and with *intent at the time*'" to sell cocaine (citations omitted; emphasis in original). Of course, the fact that a charge is adequate does not mean that it is mandatory *in haec verba.* In *People v Mike (supra),* the Court of Appeals did not require that the criteria set forth be charged to the jury. This was not an oversight since the case there on review concerned a bench trial, not a jury trial.

The requirement of a bona fide offer is a significant portion of the legal standard for a jury to apply. It is not simply a matter of credibility (as the trial court believed) nor is it fully subsumed in the standard charge on intent (as the majority here finds).

Since the jury was not instructed on the appropriate legal standard, a new trial is required.

SULLIVAN, P. J., ELLERIN and LERNER, JJ., concur with FRIEDMAN, J.; ROSENBERGER, J., dissents in a separate opinion.

Judgments, Supreme Court, New York County, rendered May 5, 1999 and March 24, 1999, respectively, affirmed.