OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This “buy and bust” case, focusing on communications from
 
 *418
 
 the “ghost” undercover officer to the arresting officer, tests the sufficiency of the People’s evidence to establish probable cause for the warrantless arrest of defendant. We conclude that the evidence is sufficient, and therefore affirm the Appellate Division order upholding defendant’s conviction.
 

 On the afternoon of August 29, 1995 defendant sold heroin to an undercover officer in exchange for $10 of pre-recorded “buy” money. Moments later defendant was arrested and charged with several counts of criminal sale and criminal possession of a controlled substance. Prior to trial, a
 
 Mapp
 
 /
 
 Dunaway
 
 hearing was held to determine the admissibility of the currency and other property recovered from defendant at the time of arrest.
 

 At the hearing, the People presented a single witness — the arresting officer, Anthony Nardi. Nardi testified that, on August 29th, he was assigned to a Brooklyn North Narcotics “buy and bust” field team. The team included a primary undercover officer charged with conducting hand-to-hand drug transactions, and a “ghost” undercover officer responsible for communicating information to the arresting officer. Finally, as the team’s arresting officer, Nardi was to maintain radio contact with the ghost officer and arrest individuals who engaged in drug sales with the primary undercover.
 

 Nardi testified that, as the operation unfolded, he was in his police vehicle awaiting a communication from the ghost undercover. At approximately 2:35 p.m., the ghost officer radioed him that there had been a “positive buy” at “Stone and Sutter.” The ghost also provided a description of “a male black wearing a black shirt, black pants and a white hat * * * on Sutter, on the project side, walking toward Christopher Street.” After receiving the transmission, Nardi drove to Sutter Avenue and proceeded toward Christopher Street, looking for an individual who matched that description. On Sutter Avenue, he saw an African-American man wearing a black shirt, black pants and white baseball hat, with a cane, walking eastbound with a woman on the side of the street fronted by housing projects. At that moment, Nardi received a second radio communication from the ghost officer, repeating the description and adding that the man was walking with a cane and accompanied by a female. No other individual in the area matched the description.
 

 Nardi arrested the man, later identified as defendant. According to the testimony, while in the process of arresting de
 
 *419
 
 fendant, Nardi received a third communication from the ghost undercover: “That’s him.” In Nardi’s words, he understood that to mean that defendant “was the guy who sold the drugs to the [primary] undercover.” Upon searching defendant Nardi recovered a $5 bill and five singles (the “buy” money) from defendant’s right hand, a $10 bill from his right front pants pocket, a knife from his right rear pocket and a cane.
 

 When questioned about the radio transmission that prompted him to arrest defendant, Nardi responded that he knew it was the ghost officer who relayed the information to him both because he recognized the officer’s voice from prior “buy and bust” operations, and because the ghost officer was the only male undercover in the field that day. From his prior field work with this particular officer, as well as other ghost undercovers, Nardi explained that “positive buy” had always meant that the primary “undercover was successful in purchasing narcotics.” Nardi therefore understood the ghost officer’s August 29 transmission to mean that the described individual “was the hand to hand” seller in a “positive buy.” Nardi further testified that be believed that, in accordance with “buy and bust” protocol, the ghost officer had received a “positive sign” from the primary undercover after defendant walked away and had then transmitted “positive buy” to him.
 

 Defendant presented no evidence, but argued that Nardi’s testimony was insufficient to establish probable cause to arrest defendant. Because there was no testimony concerning the actual signal the ghost officer received from the primary undercover, and no explanation as to what the ghost understood any such signal to have meant, defendant contended— analogizing to
 
 People v Parris
 
 (83 NY2d 342) — that the People had failed to establish the ghost officer’s basis of knowledge for saying there had been a positive buy. The hearing court denied defendant’s motion to suppress, concluding that there was probable cause to arrest defendant. The Appellate Division affirmed, as do we.
 

 Discussion
 

 Under the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting “ ‘upon the direction of or as a result of communication with’ ” a fellow officer or another police agency in possession of information sufficient to constitute probable cause for the arrest
 
 (People v Mims,
 
 88 NY2d 99, 113;
 
 People v Maldonado,
 
 86 NY2d 631,
 
 *420
 
 635-636;
 
 People v Landy,
 
 59 NY2d 369, 375). Information received from another police officer is presumptively reliable
 
 (People v Landy,
 
 59 NY2d, at 375,
 
 supra).
 
 Where, however, an arrest is challenged by a motion to suppress, the prosecution bears the burden of establishing that the officer imparting the information had probable cause to act
 
 (People v Mims,
 
 88 NY2d, at 113-114,
 
 supra).
 

 The People may, of course, establish probable cause for a warrantless arrest with hearsay information that satisfies
 
 Aguilar-Spinelli.
 
 To meet that two-part test, the prosecution must demonstrate the reliability of the hearsay informant and the basis of the informant’s knowledge
 
 (People v Parris,
 
 83 NY2d 342,
 
 supra; People v Landy,
 
 59 NY2d 369,
 
 supra; Aguilar v Texas,
 
 378 US 108;
 
 Spinelli v United States,
 
 393 US 410). In other words, there must be evidence that the informant is generally trustworthy and that the information imparted was “obtained in a reliable way”
 
 (Spinelli v United States,
 
 393 US, at 417,
 
 supra)
 
 —that it constitutes more than unsubstantiated rumor, unfounded accusation or conclusory characterization
 
 (id.,
 
 at 416;
 
 People v Parris,
 
 83 NY2d, at 348-350,
 
 supra; People v Mims,
 
 88 NY2d, at 113,
 
 supra).
 
 An unsubstantiated hearsay communication — even when transmitted by a fellow officer — will not satisfy the People’s burden.
 

 Where, however, the People demonstrate — through direct or circumstantial evidence — how a reliable hearsay informant acquired the information, both prongs of
 
 Aguilar-Spinelli
 
 may be satisfied
 
 (People v Mims,
 
 88 NY2d, at 113,
 
 supra).
 
 When, for example, the hearsay informant is a police officer who imparts to fellow officers information gathered while personally participating in or observing an undercover drug transaction, there is little doubt as to the reliability of the informant or the basis of knowledge
 
 (see, e.g., People v Petralia,
 
 62 NY2d 47,
 
 cert denied
 
 469 US 852 [officer made lawful arrest on the basis of radio communication from undercover officer who had purchased heroin and then relayed information describing suspect and suspect’s car];
 
 People v Maldonado,
 
 86 NY2d 631,
 
 supra
 
 [probable cause established based on transmission by primary undercover who engaged in a hand-to-hand drug transaction with a suspect, stating “positive buy,” followed by description of individual];
 
 People v Washington,
 
 87 NY2d 945 [undercover officer charged with observing primary undercover transmitted “positive observation,” a phrase commonly used to indicate exchange of drugs for money, and arresting officer understood those words to mean that the transmitting officer had personally witnessed a drug transaction]).
 

 
 *421
 
 The prosecution may satisfy its burden even with “double hearsay,” or “hearsay-upon-hearsay,” so long as both prongs of
 
 Aguilar-Spinelli
 
 are met at every link in the hearsay chain
 
 (People v Parris,
 
 83 NY2d, at 347-348,
 
 supra).
 
 As such, police officers may rely on hearsay information derived from a trustworthy informant who did not personally observe a defendant’s criminal activity, but came by that information in a reliable, albeit indirect, way. Where, however, there is no evidence indicating how the informant obtained the information passed from one officer to another, there is nothing by which to measure the trustworthiness of that information
 
 (People v Parris,
 
 83 NY2d, at 350,
 
 supra
 
 [police officer’s conclusory characterization of informant as an “eyewitness” did not satisfy basis of knowledge requirement where there was no further evidence indicating how the informant obtained description of the suspected burglar]).
 

 This case differs from existing precedents in that the People not only seek to establish probable cause by relying on hearsay information communicated among three members of a “buy and bust” field team, but also rely on circumstantial evidence to demonstrate the basis of knowledge for that information. In making the arrest, Officer Nardi did not himself observe defendant’s criminal activity — his only information was that received from the ghost. Where in previous cases our inquiry centered on the
 
 informant’s
 
 basis of knowledge, the primary focus here is on how the
 
 ghost officer
 
 obtained the information he communicated to Nardi.
 

 Although there was no direct evidence regarding the ghost’s basis of knowledge, here the suppression court could draw an inference, from the evidence presented, as to how that officer received his information
 
 (Spinelli v United States,
 
 393 US, at 416-417, supra;
 
 People v Mims,
 
 88 NY2d, at 114,
 
 supra; People v Gonzalez,
 
 91 NY2d 909, 910). It was entirely reasonable for the suppression court to infer from Nardi’s testimony that the ghost officer’s information was obtained from firsthand observation and a signal or communication from the primary undercover indicating that a drug transaction had been completed.
 

 As such, defendant’s analogy to
 
 People v Parris
 
 (83 NY2d 342,
 
 supra)
 
 fails. Briefly stated, in
 
 Parris
 
 the informant was a civilian who provided the police with a description of a suspected burglar. The police officer who interviewed the informant repeated to his fellow officers the description of the suspect, noting that it had been given to him by a “next door
 
 *422
 
 neighbor” “eyewitness.” With only the officer’s conclusory characterization of the informant as an “eyewitness,” this Court concluded that Aguilar-Spinelli’s “basis of knowledge” prong had not been satisfied.
 

 Here, by contrast, Nardi’s testimony established that the ghost officer’s transmittal of information was an anticipated, intended outcome of the August 29 undercover narcotics operation. The sole objective of that operation was to purchase drugs, and each member of the field team had a prearranged role: the primary undercover to engage in hand-to-hand drug transactions and signal successful “buys;” the ghost to communicate that information to the arresting officer; and the arresting officer to maintain radio contact with the ghost officer and arrest suspects who engaged in drug sales with the primary undercover. As he sat in his vehicle on August 29, therefore, Nardi expected to receive information from the ghost officer when the primary undercover signaled him that a drug transaction had been completed.
 

 As further established by the testimony, the ghost officer’s transmission — “positive buy,” followed by a description of a place and a person — had an accepted meaning in the field. Nardi testified that, as a result of his prior experience, he understood the communication to mean that the ghost officer had received a signal from the primary undercover indicating a “positive buy” or successful drug transaction at “Stone and Sutter” with a “male black wearing a black shirt, black pants and a white hat.” On the basis of the ghost officer’s transmission Nardi also understood that the suspected drug seller was walking toward Christopher Street on the side of Sutter Avenue fronted by housing projects.
 

 Nardi’s understanding of the information relayed by the ghost officer, as well as the reliability of that information, is confirmed by the ensuing events. Nardi located an individual on Sutter Avenue who matched the detailed description provided, in two communications, by the ghost officer. Only defendant fit the description. As Nardi apprehended defendant, the ghost radioed a third time — “That’s him” — signaling that defendant was the individual who had sold drugs to the primary undercover. From this record, we conclude that there is evidence to support the lower court’s determination that there was probable cause for the arrest of defendant.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 
 *423
 
 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.