**Derrick MORGAN, Petitioner,**

v.

**SUPERINTENDENT, Shawangunk
Correctional Facility,
Respondent.**

**No. 97 Civ. 6672 (LAK).**

United States District Court,
S.D. New York.

March 30, 2000.

Derrick Morgan, petitioner pro se.

David M. Cohn, Assistant District Attorney, Robert M. Morgenthau, District Attorney, New York City, for respondent.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

Petitioner Derrick Morgan is before this Court on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In a report and recommendation dated January 6, 2000 ("Report and Recommendation"), Magistrate Judge Michael H. Dolinger recommended that the Court deny Morgan's petition. Petitioner has filed objections to the Report and Recommendation, which the Court overrules. While the Court agrees with Judge Dolinger's recommendation and the bulk of his analysis, it writes separately to address the issues raised by petitioner and to clarify the appropriate standard, under New York law, for evaluating unsworn hearsay as the basis for probable cause to execute a warrantless arrest.

1. *People v. Morgan,* 199 A.D.2d 143, 605 N.Y.S.2d 85 (1st Dept.1993).

2. *People v. Morgan,* 82 N.Y.2d 928, 610 N.Y.S.2d 180, 632 N.E.2d 490 (1994).

3. Respondent's Answer ("Resp.Answer"), Ex. J.

*Background*

*Prior Proceedings*

On June 12, 1990, judgment was entered in the Supreme Court of the State of New York, New York County, convicting petitioner, after a jury trial, of Murder in the Second Degree. Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. His conviction was affirmed by the Appellate Division, First Department, on December 16, 1993 [1] and the New York Court of Appeals denied petitioner's application for leave to appeal on January 14, 1994.[2]

Petitioner filed his petition for habeas corpus relief on April 24, 1997.[3] This Court dismissed the petition as untimely on January 7, 1998. On September 25, 1998 the Second Circuit vacated the dismissal and remanded to this Court for further proceedings in light of *Ross v. Artuz,*[4] which held that prisoners whose convictions became final prior to the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA)[5] have a grace period of one year from that date, April 24, 1996, in which to file their habeas corpus petitions. In consequence, the petition is timely and the Court now considers it on its merits.

*Petitioner's Arrest*

Petitioner's conviction stems from the shooting death of Duval Young on July 4, 1989. At approximately midnight on that date Officers Keller and Kolosiej were on the corner of 125th Street and Lenox Avenue when a vehicle pulled over and one of its three occupants, a woman, claimed that they had just seen a black male wearing white shoot someone on 123rd Street between Lenox and Seventh Avenues.[6] She identified petitioner as the shooter, pointing him out to the officers as he walked

4. 150 F.3d 97 (2d Cir.1998).

5. 28 U.S.C.A. §§ 2254, 2255.

6. Transcript of the *Huntley* and *Wade* Hearings, held March 21, 1990 ("Tr.") 13, 24, 61–63, 68–70.

northbound across 124th Street on Lenox Avenue.[7] The officers radioed a report of the suspect, who was identified as a "male black wearing all white," and began pursuit.[8] Officers Bowden and Biondo heard the radioed message that shots had been fired and officers were in pursuit of a suspect with a gun on 124th Street.[9] They responded by car and saw a black male dressed in white running west on 124th Street while being chased by Officer Keller. They joined pursuit and, after petitioner ignored their commands to stop, apprehended him by physical force on 125th Street and Seventh Avenue.[10]

After apprehending petitioner, Officers Bowden and Biondo handcuffed him, read him his *Miranda* warnings, and took him to the scene of a shooting at 123rd Street between Lenox and Seventh Avenues where the victim identified him as the shooter.[11]

### Discussion

In his original habeas petition, petitioner stated three grounds upon which he claimed he was being held unlawfully. He subsequently withdrew his claims of prosecutorial misconduct and an improper jury charge, leaving only a Sixth Amendment ineffective assistance of counsel argument for consideration.[12]

In order to demonstrate ineffective assistance of counsel, petitioner must show that "counsel's performance was so defective that 'counsel was not functioning as

the counsel'" guaranteed the defendant by the Sixth Amendment ... and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"[13] To satisfy the first prong petitioner is required to show that counsel's performance was 'outside the wide range of professionally competent assistance.'"[14] To satisfy the second, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15] This is a very demanding standard of proof. In this case petitioner must show that his counsel acted beyond the realm of professional competence and that, but for this incompetence, there is a reasonable probability that the outcome of petitioner's trial would have been different.

Petitioner criticizes his counsel's performance only at the pre-trial stages of the proceedings. Specifically, petitioner contends that the white shirt he was wearing the night of his arrest was critical to the government's case against him and that it should not have been allowed into evidence because it was seized pursuant to an illegal arrest.[16] He alleges that his attorney's failure to make a timely and sufficient motion to suppress physical evidence unduly prejudiced his case.[17]

Following petitioner's indictment, his attorney submitted an omnibus motion requesting, among other things, a *Mapp*[18]

7. *Id.*

8. *Id.*

9. *Id.* at 126, 152.

10. *Id.* at 126–29, 152–55.

11. *Id.* at 129–135, 155–62.

12. Resp. Answer, Ex. K (Nov. 28, 1997 letter to the Court from Derrick Morgan).

13. *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997), *cert. denied*, 522 U.S. 1128, 118 S.Ct. 1077, 140 L.Ed.2d 135 (1998) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

14. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. *Accord, e.g., Guerrero v. United States*, 186 F.3d 275, 281 (2d Cir.1999).

15. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

16. *See* Petitioner's Memorandum of Law ("Pet.Mem.") 13, 15, 21–22.

17. *See id.* at 8–13.

18. *See Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding exclusionary rule applicable to state court prosecutions).

hearing to determine whether certain physical evidence seized from petitioner should be excluded.[19] In support of this request the attorney submitted an affirmation containing allegations of fact that the trial judge found insufficient to justify either suppression or a hearing.[20] At the *Wade–Huntley* hearings held pursuant to the omnibus motion,[21] petitioner's attorney told the court that he submitted insufficient information with regard to the *Mapp* hearing because he had not had time to speak with petitioner, his client, prior to submitting the motion and therefore did not know what had been taken from petitioner and what should be suppressed.[22] The attorney acknowledged that he subsequently spoke with petitioner and could have amended his papers in a timely manner, but did not.[23] In fact, petitioner's attorney failed to notice that the court had denied his motion for a *Mapp* hearing and did not address the issue until the *Wade–Huntley* hearings immediately prior to trial.[24] The court denied his application for a *Mapp* hearing as untimely.[25]

This Court assumes, without deciding, that the attorney's conduct with regard to this issue fell short of professional competence. Petitioner's claim fails nonetheless, however, because he is unable to satisfy the second prong of the ineffective assistance of counsel test. That is, he is unable to show a reasonable probability that, but for his attorney's oversights, the outcome of the trial would have been different. This requires, *inter alia*, a threshold finding that the motion to suppress, timely filed and sufficiently supported, would have been meritorious. Petitioner has not made such a showing.

### Merits of the Suppression Motion

The success of the motion to suppress would have turned on whether petitioner was arrested legally which, in turn, would have depended on whether the police had probable cause to arrest him.

### Probable, or Reasonable, Cause

■ The Court agrees with petitioner that he was under arrest as of the time Officers Bowden and Biondo handcuffed him, placed him in the police vehicle, and read him his *Miranda* rights.[26] Thus, although there are situations in which the police lawfully may detain a suspect and transport him to the scene of a crime for eyewitness identification without probable cause,[27] this was not such a situation. Probable cause must be assessed, therefore, as of the time Officers Bowden and Biondo apprehended petitioner and without consideration of the victim's positive identification following petitioner's arrest.

■ Under the Fourth Amendment, a warrantless arrest is constitutionally valid only if the arresting officers had probable cause to make the arrest at the time of the arrest.[28] Similarly, New York requires a

19. Tr. 7.

20. *Id.* at 8.

21. *Id.* at 2–203.

22. *Id.* at 7.

23. *Id.* at 8–9.

24. *Id.* at 7–9.

25. *Id.* at 10.

26. *See* Pet.Mem. 13–15; *see also People v. Hicks*, 68 N.Y.2d 234, 240, 508 N.Y.S.2d 163, 166, 500 N.E.2d 861 (1986) (determining when a *de facto* arrest has taken place requires looking to "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position") (citations omitted).

27. *See Hicks*, 68 N.Y.2d at 240–43, 508 N.Y.S.2d at 167–69, 500 N.E.2d 861.

28. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The Second Circuit has defined probable cause as existing "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *See United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

police officer to have reasonable cause before making a warrantless arrest.[29] Reasonable cause, which has been held to have substantially the same meaning as probable cause under the Fourth Amendment,[30] is defined as follows:

> " 'Reasonable cause to believe that a person has committed an offense' exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay." [31]

The Court believes that Magistrate Judge Dolinger is correct when he states, in his Report and Recommendation, that the transcript of the pre-trial hearing contains sufficient testimonial evidence to conclude that the police had probable cause to arrest petitioner, following which they appropriately took his clothing into custody.[32] This conclusion requires some elaboration, however, due to the nature of the evidence on which the police relied when arresting petitioner as well as the issues raised by petitioner in his objections to the Report and Recommendation.

### 1. Statements by a Civilian Informant

In this case, the officers who radioed the bulletin that led to petitioner's arrest relied on the statement and identification of a civilian informant. It is undeniable that the woman in the vehicle who initially identified petitioner was a previously unknown informant, and her statement was unsworn hearsay. As petitioner correctly points out in his objections to the Report and Recommendation, New York law requires that this kind of information be evaluated under the two-pronged *Aguilar–Spinelli* test before it is relied on to establish probable cause for an arrest.[33]

■ *Aguilar v. Texas*[34] and *Spinelli v. United States*[35] established a two-pronged analysis for assessing the sufficiency of informants' tips. That analysis looks first to the veracity of the informant and second to the reliability of the informant's information. The Supreme Court has since eschewed the rigid application of these two elements, as well as the idea that they should be viewed as entirely separate and independent requirements, adopting instead an understanding that they are "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' . . . ." [36] New York, on the other hand, has, as a matter of state constitutional law, rejected this more flexible standard and continues to adhere to a strict two-pronged test.[37] Because petitioner's Sixth Amendment claim turns on whether the arrest was legal under New York law, the Court must apply the *Aguilar–Spinelli* test to evaluate the information obtained from the informant.

---

**29.** N.Y.Crim.Proc.L. § 140.10(1)(b) (McKinney's 1992) (hereinafter "CPL").

**30.** *See Wong Sun v. United States*, 371 U.S. 471, 478 n. 6, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Fisher*, 702 F.2d 372, 375 n. 6 (2d Cir.1983); *Wu v. City of New York*, 934 F.Supp. 581, 586 n. 1 (S.D.N.Y. 1996).

**31.** N.Y. CPL § 70.10(2).

**32.** Report & Recommendation 8.

**33.** Pet. Objections to the Report & Recommendation ("Pet.Objections") 17 n. 11.

**34.** 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**35.** 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**36.** *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**37.** *See People v. Hetrick*, 80 N.Y.2d 344, 348, 590 N.Y.S.2d 183, 185, 604 N.E.2d 732 (1992); *People v. Bigelow*, 66 N.Y.2d 417, 423, 497 N.Y.S.2d 630, 634, 488 N.E.2d 451 (1985); *see also United States v. Rogers*, No. 99 Cr. 710(CM), 2000 WL 101235, at *10 n. 2 (S.D.N.Y. Jan. 27, 2000).

■] The first prong of the *Aguilar–Spinelli* test evaluates the credibility of the informant. Under New York law an identified citizen informant is presumed to be personally reliable.[38] In this case the woman who volunteered information to the police was an identified informant.[39] There is no reason to doubt her veracity, or that of the other passengers in the vehicle.[40] Thus, the first prong of the test is satisfied.

The second prong focuses on the basis of the informant's information. There is testimony throughout the hearing transcript that explicitly and implicitly states the woman and the others in the vehicle saw the shooting, making the basis for their knowledge of the events firsthand observation.[41] It is well established that personal observations are considered reliable and satisfy the second prong of the *Aguilar–Spinelli* test.[42] Officer Kolosiej testified that the witnesses indicated they "observe[d] something"[43] and that upon further questioning they indicated that they "were close to the scene of the shooting ... close enough to see what happened."[44] This is sufficient to establish that the informants' basis of knowledge was reliable.[45]

■] In light of the above, the Court finds that the information received from the passengers in the vehicle satisfied the *Aguilar–Spinelli* test, that the police were justified in relying on that information, and that it, in conjunction with what the officers observed personally, provided probable cause for petitioner's arrest. The police had firsthand knowledge that a shooting had occurred in extremely close proximity to the time and place that petitioner was identified, pursued, and apprehended,[46] petitioner matched the description of the shooter given by witnesses and the victim himself,[47] and petitioner fled and did not stop even when ordered to do so by uniformed police officers.[48] All of these elements support the conclusion that the

---

**38.** *See People v. Parris*, 83 N.Y.2d 342, 350, 610 N.Y.S.2d 464, 468, 632 N.E.2d 870 (1994); *Hetrick*, 80 N.Y.2d at 349, 590 N.Y.S.2d at 185, 604 N.E.2d 732.

**39.** The informant need not testify at trial, or even be named publicly. So long as the citizen's identity is known to the police, she is an identified informant. *See People v. Rajnauth*, 253 A.D.2d 444, 444, 676 N.Y.S.2d 632, 633 (2nd Dept.1998). Although the Court may rely only on events that occurred prior to the arrest in applying the *Aguilar–Spinelli* test, it should be noted that the after the informant volunteered information to the police she returned, along with the two other passengers in the vehicle who also were witnesses to the shooting, to the scene of the crime where she answered additional questions about the basis for her knowledge, and later went to the precinct where she saw petitioner and once again identified him as the shooter before being interviewed by the investigating detective assigned to the case. *See* Tr. 39–43, 63–64, 74–75, 76–82.

**40.** Contrary to petitioner's allegations, the Court finds no evidence in the record to indicate that the informants in this case provided the police with false names and addresses. *See* Pet. Objections 18 n. 11. In fact, the trial court identified two of the individuals that were in the vehicle by name when the prosecution informed the court that those witnesses

had not been located and would not be called to testify. Trial transcript 547–52.

**41.** *Id.* at 65, 82, 167.

**42.** *See Hetrick*, 80 N.Y.2d at 348, 590 N.Y.S.2d at 185, 604 N.E.2d 732; *People v. Rivera*, 210 A.D.2d 895, 896, 620 N.Y.S.2d 652, 653 (4th Dept.1994).

**43.** Tr. at 65.

**44.** *Id.* at 82.

**45.** *See, e.g., People v. Johnson*, 164 M.2d 527, 533, 624 N.Y.S.2d 522, 527 (Sup.Ct. Queens Co.1995).

**46.** Upon receiving the informants' information, Officer Keller pursued petitioner while Officer Kolosiej, along with the informants, went to the scene of the shooting at the corner of 123rd Street and Lenox Avenue where Officers Calderon and Calderon had already been drawn by a crowd and, having observed the victim in a pool of blood, radioed that a man had been shot and requested an ambulance. Tr. 63–64, 88–93.

**47.** *Id.* at 109 (when asked by Officer Calderon who shot him, the victim described the shooter as a male black dressed all in white).

**48.** *Id.* at 126–29, 152–55. Although flight alone is generally not sufficient to justify a

police had reasonable cause, under New York law, to arrest petitioner. They serve also to satisfy the constitutional requirement of probable cause as set forth by the Supreme Court in *Illinois v. Gates.*[49] It seems clear to this Court that, considering the "totality of circumstances" and viewing this as a common sense, practical determination, the police did in fact have probable cause to arrest petitioner.

*Imputation of Knowledge*

In his objections to Magistrate Judge Dolinger's Report and Recommendation petitioner argues that even if Officers Keller and Kolosiej had probable cause to arrest him, the arresting officers did not.[50] Petitioner believes that the Magistrate Judge, the Appellate Division, and respondent all incorrectly assumed that the officers who had the face-to-face encounter with the woman who identified petitioner as the shooter apprehended, detained, and transported petitioner to the scene of the crime and that this was the basis for their respective beliefs that the police had prob-

able cause to make the arrest.[51] This, however, is not the case.

▮▮▮▮ Petitioner misunderstands the law of imputed knowledge. He argues that the officers who arrested him did not have the requisite knowledge to establish probable cause for arrest and, as a result, his belongings were improperly seized, making his attorney's failure to file a sufficient motion for a *Mapp* hearing or a timely suppression motion prejudicial to his case.[52] In fact, where law enforcement authorities are cooperating, the knowledge of one is presumed shared by all,[53] and "[t]he determination of whether probable cause to arrest exists can be based on the collective knowledge of all of the officers involved. . . ."[54] Thus, it does not matter that the arresting officers in this case did not personally speak with the woman who identified petitioner as the shooter. What is required is that the arresting officer act " 'upon the direction of or as a result of communication with' a fellow officer . . . in possession of information sufficient to constitute probable cause for the arrest."[55]

stop or pursuit, petitioner's flight may be considered in conjunction with other attendant circumstances such as time and location, as well as the police officers' knowledge that a crime had been committed, to establish probable cause. *See Sibron v. State of New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."); *United States v. Martinez–Gonzalez,* 686 F.2d 93, 98 (2d Cir.1982) (defendant's unexpected appearance and precipitous retreat when agents identified themselves as police established probable cause); *People v. Martinez,* 80 N.Y.2d 444, 447–48, 591 N.Y.S.2d 823, 824–25, 606 N.E.2d 951 (1992) (flight, along with time, location, and observed suspicious activity sufficient to justify pursuit and stop); *People v. Quarles,* 187 A.D.2d 200, 204, 593 N.Y.S.2d 635, 638 (4th Dept.1993) (telling combination of fresh crimes, defendant's proximity to them and his flight when discovered justified police officers' arrest of defendant). *Cf. Wong Sun v. United States,* 371 U.S. 471, 482–84, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (flight alone must

be regarded as ambiguous conduct not capable of justifying probable cause).

**49.**  462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**50.**  Pet. Objections 18.

**51.**  *Id.* at 7–13.

**52.**  *Id.* at 22–23.

**53.**  *Illinois v. Andreas,* 463 U.S. 765, 772 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) (citing *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)); *see also United States v. Santa,* 180 F.3d 20, 28 (2d Cir.1999).

**54.**  *United States v. Cruz,* 834 F.2d 47, 51 (2d Cir.1987).

**55.**  *People v. Ketcham,* 93 N.Y.2d 416, 419, 690 N.Y.S.2d 874, 877, 712 N.E.2d 1238 (1999) (quoting *People v. Mims,* 88 N.Y.2d 99, 113, 643 N.Y.S.2d 502, 510, 666 N.E.2d 207 (1996)). The information received from another police officer is presumptively reliable. Where an arrest is challenged, the prosecution must prove that the officer imparting the information that lead to the arrest had proba-

As this Court has determined, Officers Keller and Kolosiej had probable cause for a warrantless arrest. They communicated the relevant information, including petitioner's description and the route by which he was fleeing, to Officers Bowden and Biondo who thereafter apprehended him. The knowledge of Officers Keller and Kolosiej is imputed to Officers Bowden and Biondo who therefore possessed probable cause to arrest petitioner. Petitioner does not present any legal arguments to the contrary. Indeed, the cases cited by petitioner actually support a finding of probable cause based on the imputed knowledge of the arresting officers.[56]

As a result, the arrest was legal and the subsequent seizure of petitioner's clothing, money, and other personal belongings was appropriate. Because there is no basis for suppressing such physical evidence, the failure of petitioner's attorney to file a sufficient or timely motion to suppress could not have prejudiced the case. In consequence, petitioner's claim of ineffective assistance of counsel must fail.

### Conclusion

The petition for a writ of habeas corpus is denied and dismissed. There having been no substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability and certifies that any appeal would not be taken in good faith within the meaning of 28 U.S.C. § 1915.

SO ORDERED.

---

ble cause to act. *See Ketcham,* 93 N.Y.2d at 420, 690 N.Y.S.2d at 877, 712 N.E.2d 1238; *see also People v. Havelka,* 45 N.Y.2d 636, 641, 412 N.Y.S.2d 345, 347, 384 N.E.2d 1269 (1978).

**56.** *See, e.g., People v. Brnja,* 50 N.Y.2d 366, 429 N.Y.S.2d 173, 406 N.E.2d 1066 (1980); *People v. Lypka,* 36 N.Y.2d 210, 213–14, 366 N.Y.S.2d 622, 625, 326 N.E.2d 294 (1975); *People v. Horowitz,* 21 N.Y.2d 55, 59–60, 286 N.Y.S.2d 473, 476–77, 233 N.E.2d 453 (1967).

As stated in *People v. Brnja,* "[t]he arresting officer acts with probable cause when he arrests ... on the basis of information received from a fellow officer who testifies at the suppression hearing concerning how he obtained his knowledge, which information itself or together with that known to the arresting officer establishes probable cause." *Brnja,* 50 N.Y.2d at 374 n. 4, 429 N.Y.S.2d at 177 n. 4, 406 N.E.2d 1066. Petitioner quotes this language, but fails to appreciate its precise application to his case.