■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACK DICKERSON, Appellant. [799 NYS2d 50]—

Judgment, Supreme Court, New York County (Ronald Zweibel, J., at suppression hearing; James Yates, J., at jury trial and sentence), rendered October 1, 2002, convicting defendant of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 5 to 10 years, unanimously affirmed.

It is well settled that probable cause to arrest an individual without a warrant exists when the police possess sufficient information to support a reasonable belief that an offense has been or is being committed (*see People v Maldonado*, 86 NY2d 631, 635 [1995]; *People v Hicks*, 68 NY2d 234, 238 [1986]; *People v Bigelow*, 66 NY2d 417, 423 [1985]). Although hearsay statements are sufficient to establish probable cause for a warrantless arrest (*see People v Ketcham*, 93 NY2d 416 [1999]; *People v Parris*, 83 NY2d 342, 346 [1994]), they must satisfy the two-prong *Aguilar-Spinelli* test (*see Spinelli v United States*, 393 US 410 [1969]; *Aguilar v Texas*, 378 US 108 [1964]). This test requires a showing that the source of information is reliable and that the source has a basis for the information given (*see People v Ketcham*, 93 NY2d at 420; *People v Parris, supra*). The basis prong can be satisfied by direct or circumstantial evidence, even when the information received is double hearsay (*see People v Ketcham*, 93 NY2d at 421).

The fellow officer rule allows a police officer to act upon a communication of a fellow officer "provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest" (*People v Horowitz*, 21 NY2d 55, 60 [1967]; *accord People v Ramirez-Portoreal*, 88 NY2d 99, 113 [1996]; *see also People v Salinas*, 286 AD2d 601, 602-603

[2001]). When hearsay is provided by one police officer who imparts to a fellow officer "information gathered while personally participating in or observing an undercover drug transaction, there is little doubt as to the reliability of the informant or the basis of knowledge" (*People v Ketcham*, 93 NY2d at 420).

Although, as defendant contends, there was no direct evidence regarding the sending officers' basis of knowledge, the suppression court could have drawn an inference from the receiving officer's testimony as to how the sending officers received the information. Here, the detective, whose testimony the People presented at the suppression hearing to establish probable cause for defendant's warrantless arrest, received hearsay communications from fellow police officers who were assigned as "ghost" officers of that day's buy and bust team. The ghost officers were specifically assigned to observe the undercover officer and to give a description of any person with whom she came in contact. Defendant was identified to the receiving detective by at least one of the three ghost officers over a point to point radio, with only one frequency, as having participated in selling drugs to an undercover officer, who was part of the same buy and bust team. The detective also received a description of the defendant before he was apprehended, and one of the ghost officers indicated that a positive buy had been made. Although the arresting detective could not identify which ghost officer made which particular statement, he recognized all the voices which came over the radio communication, thus ensuring that whichever officer made the statement, he or she was part of the ghost team assigned to work that particular buy and bust. Thus, it is of no consequence that the arresting detective could not attribute each particular communication to a particular officer.

Based on this evidence, it would have been "entirely reasonable for the suppression court to infer from [the detective's] testimony that the ghost officer's information was obtained from first-hand observation and a signal or communication from the primary undercover indicating that a drug transaction had been completed" (*People v Ketcham*, 93 NY2d at 421). Moreover, the detective's understanding of the information relayed by the ghost officers, as well as its reliability, was "confirmed [pre-apprehension] by the ensuing events" during which the person who was eventually apprehended fit the description given by the ghost officers (*id.* at 422).

In light of our determination that the People established that the police had probable cause to arrest defendant based solely on the arresting detective's testimony, we need not reach

defendant's further contention that the hearing court improperly reopened the suppression hearing after the People had rested.

Finally, defendant's arguments respecting certain isolated remarks during the prosecutor's summation are not preserved for our review (*see People v Nuccie*, 57 NY2d 818 [1982]), and we decline to reach them in the interest of justice. Were we to review the challenged remarks, we would find they constituted fair comment or fair response, did not shift the burden of proof or deprive defendant of a fair trial (*see People v Perez*, 4 AD3d 212 [2004], *lv denied* 2 NY3d 804 [2004]), and, in any event, were harmless in light of the overwhelming evidence of defendant's guilt (*see People v Crimmins*, 36 NY2d 230 [1975]). Concur—Tom, J.P., Saxe, Friedman, Marlow and Catterson, JJ.