OPINION OF THE COURT
Lawrence K. Marks, J.
This case presents the issue of whether the police may fore *776 ibly detain a bystander they observe speaking with the target of their investigation whom they are about to arrest. A corollary issue is whether the bystander has standing to challenge whether the police had probable cause to arrest the target in the first place.
George McLoyd, the defendant and bystander, has been indicted for criminal possession of a weapon in the second degree. He moves to suppress a loaded firearm police officers seized from him after they forcibly detained him on the street as they were arresting another person. At a Mapp hearing, the People presented the testimony of Detective Richard Kuhnapfel. Based on that testimony, which the court finds credible, the court makes the following findings of fact and conclusions of law.
I
In the early daylight hours of March 22, 2011, Detective Kuhnapfel, a member of the Regional Fugitive Task Force, attended a tactical meeting with several other task force members. At that meeting, Detective Mario Muniz advised the officers that he had received information from the squad commander of the 28th Precinct that a suspect named Tommy Davis was wanted for a shooting and was the subject of a parole warrant. Detective Muniz did not relay any specific information about the shooting or the warrant, but simply showed the team a picture of Davis and advised them that they would be attempting to apprehend him that morning at Davis’s mother’s residence on East 117th Street in Manhattan.
Six officers then proceeded without a warrant to that location, in two unmarked police vehicles. They arrived at the corner of East 117th Street and Madison Avenue at about 6:15 a.m., and immediately saw two men in conversation in front of a bodega. Detective Muniz radioed to the team that the man on the left appeared to be Tommy Davis. The officers, who were not in uniform but were conspicuously wearing bulletproof vests, gun belts and tactical vests clearly marked “police,” thus got out of their cars to confront the person they thought was Davis. As they did, the man on the right, who was unknown to the officers, began to walk away toward 117th Street. Three of the officers approached the man on the left, who in fact was Tommy Davis, while Detective Kuhnapfel and at least one other officer went over to confront the man walking away, who was the defendant, George McLoyd. Kuhnapfel walked up to defend *777 ant and, without saying anything, grabbed him by the shoulders and placed him up against the wall. He then told defendant to put his hands on the wall and keep them there. None of the officers had drawn their guns.
Kuhnapfel testified that he placed defendant against the wall to protect the safety of all the officers involved, and that he was concerned that defendant might interfere with the apprehension of the man he believed to be Davis. As he was detaining defendant, he watched the other officers handcuff Davis. Defendant, however, seemed nervous, and repeatedly removed one of his hands from the wall to turn to the side with his back to the officers. In response, Kuhnapfel told defendant several times to keep his hands on the wall. When defendant failed to comply with these instructions, Kuhnapfel became concerned that defendant might have a weapon. He then asked another officer to hold defendant against the wall while he proceeded to pat down defendant in the waist area. When he felt the butt of a pistol in the back of defendant’s waist under his jacket, Kuhnapfel pulled up defendant’s jacket, saw a gun in defendant’s waistband and removed it. Defendant was then immediately wrestled to the ground, handcuffed and arrested.
II
Standing
Defendant argues that the People failed to establish that they had probable cause to arrest Tommy Davis, and he claims that without lawful grounds to arrest Davis, his own forcible detention was, by extension, similarly unlawful. He further argues that even if the police had probable cause to arrest Davis, defendant’s earlier brief conversation with Davis on a public street did not allow the police to forcibly detain him as he walked away from the scene.
The People, on the other hand, argue that defendant lacks standing to contest the lawfulness of Davis’s arrest, and they cite to numerous decisions that affirm the long-standing principle that a defendant may not assert another’s Fourth Amendment rights. (See e.g. People v Henley, 53 NY2d 403 [1981]; Rakas v Illinois, 439 US 128 [1978].) The People are correct, of course, that the rights protected by the Fourth Amendment are personal, and that the exclusionary rule applies only to those whose own rights have been infringed by a police search and seizure. (See People v Wesley, 73 NY2d 351, 355 [1989].) However, in all of the cases cited by the People, the al *778 leged violation of one person’s Fourth Amendment rights yielded evidence that the police then used against a different person. (See People v Henley, supra [arrest yielded consent to search apartment where criminal proceeds recovered]; People v Hill, 260 AD2d 400 [2d Dept 1999] [arrest of buyer led to recovery of cocaine]; People v Hamilton, 232 AD2d 899 [3d Dept 1996] [arrest yielded statements implicating defendant]; People v Eaddy, 200 AD2d 896 [3d Dept 1994] [same]; People v Irby, 162 AD2d 714 [2d Dept 1990] [same].) In declining to extend standing to the defendants in these cases, these courts recognized that no personal right of the individual defendant had been infringed in securing evidence, only the rights of others. These decisions therefore reflect “[t]he policy choice made by this State ... to limit the remedy of suppression to defendants whose own rights have been infringed, which reflects the belief that the trial process itself protects the innocent.” (People v Wesley, 73 NY2d at 360.)
Here, Davis’s arrest did not yield any evidence that the People are attempting to use against defendant, nor did it yield any evidence providing an independent basis to justify defendant’s detention. The People’s attempt to frame the issue as one of defendant’s standing to challenge the arrest of Davis is therefore misplaced. Defendant does not challenge Davis’s arrest. Rather, recognizing that the sole predicate for defendant’s detention is the information concerning Davis that the police had earlier received from the squad commander of the 28th Precinct, defendant challenges his own detention, and for that he does have standing. Viewed from this lens, this case is analogous to People v Millan (69 NY2d 514 [1987]), where the Court of Appeals held that a passenger in a car has standing to contest a police stop of the car, even though the stop is for a traffic violation committed only by the driver. The Court in Millan reasoned that the passenger in an automobile stopped by police does not invoke the personal right of the driver to contest the stop of the car; the passenger invokes his or her own independent right to contest the police restriction on his or her own movement. (Id. at 520 n 6; see also People v May, 81 NY2d 725 [1992]; People v Matthew, 228 AD2d 260 [1st Dept 1996]; cf. People v Mosley, 68 NY2d 881 [1986].)
Similarly, in this case defendant does not vicariously assert the Fourth Amendment rights of Davis, but instead asserts his own personal rights. While it may seem that defendant is attempting to defend Davis against unlawful police action, that is *779 only because the same information the police relied upon to arrest Davis supplies their purported justification to forcibly detain defendant. Because defendant has standing to challenge the basis of his own detention, and since the justification for that detention stems from the prosecution’s claim that the police had probable cause to arrest Davis, the court concludes that defendant has standing to challenge the underlying basis for the claim that the police had probable cause to arrest Davis.
Probable Cause
In his moving papers, and again at the hearing, defendant made plain that he was challenging the arresting officers’ reliance on the information regarding Tommy Davis received from the 28th Precinct squad commander. The defense thus sought repeatedly to negate whatever reliance the People were placing on the so-called “fellow officer rule.” (See People v Ketcham, 93 NY2d 416, 419 [1999].) The “fellow officer” rule provides that hearsay information received from another police officer is presumptively reliable, and allows the receiving officer to act on the information relayed by the fellow officer. (People v Mims, 88 NY2d 99, 113 [1996].) The rule is a practical one, recognizing that information sent from one police officer to another is likely to be more reliable than information police receive from non-police sources. (People v Lypka, 36 NY2d 210, 214 [1975].) Nevertheless, the officer who receives the information almost always is without firsthand knowledge of whether the information relayed is based on a reliable informant or an anonymous tip. (Cf. People v Petralia, 62 NY2d 47 [1984].) The information is unsubstantiated hearsay, and although it is presumptively reliable because it is being transmitted by another police officer, the presumption of reliability is negated where a defendant challenges the underlying reliability of the information possessed by the sending officer. (People v Lypka, 36 NY2d at 214.) When the reliability of the information sent is put into question, the prosecution is then required to establish that the officer who transmitted the information had probable cause to act. (See People v Ketcham, 93 NY2d at 420; People v Lypka, 36 NY2d at 214.) If it turns out that the sending officer was simply relaying an anonymous tip, the receiving officer would have no greater right to act on that information than the sending officer. The “fellow officer” rule thus allows the police to act on information relayed by other officers, but once the basis of that information is challenged, the officer who received the information will have no greater right to rely on the information than *780 the officer who transmitted it. Any other rule would allow an illegal arrest to be insulated from challenge “by the decision of the instigating officer to rely on fellow officers to make the arrest.” (Whiteley v Warden, Wyo. State Penitentiary, 401 US 560, 568 [1971].)
Here, despite having an opportunity to do so, the People elected not to present any evidence to support the underlying hearsay report that originated with the 28th Precinct squad commander and was relayed from Detective Muniz to Detective Kuhnapfel. As a result, the court has no basis to evaluate whether that report was based on reliable eyewitness information of a known citizen-informant or on a vague anonymous tip called into a police hotline. Similarly, the court has no basis to decide whether the information that there was an outstanding parole warrant was credible and whether it could be relied on when the officers approached Davis to arrest him. Notably, a warrant was not provided to the court. (See People v Lopez, 206 AD2d 894 [4th Dept 1994].) Thus, without any basis to believe the police had legitimate grounds to arrest Davis, it follows that there is similarly no basis to conclude the police were justified in detaining defendant as part of that arrest.*
Forcible Detention of a Bystander
Even assuming, however, that the People established probable cause to arrest Davis, the police conduct in forcibly detaining defendant was not warranted. The People concede, as they must, that defendant was forcibly stopped and detained when Detective Kuhnapfel approached him on the street, grabbed him by the shoulders and forcibly placed him against a wall. The right to stop and detain a person arises from “a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor.” (People v De Bour, 40 NY2d 210, 223 [1976].) The right to frisk for weapons is triggered where an officer “reasonably suspects that he is in danger of physical injury.” (Id.; see also CPL 140.50 [3].) *781 However, a person may not be forcibly stopped merely because he or she is seen in the company of another whom the police have probable cause to arrest. (People v Martin, 32 NY2d 123 [1973]; People v Terrell, 185 AD2d 906 [2d Dept 1992]; People v Durant, 175 AD2d 176 [2d Dept 1991]; People v Chinchillo, 120 AD2d 266 [3d Dept 1986]; see also Ybarra v Illinois, 444 US 85 [1979].)
While it is true that in some limited circumstances the courts have permitted the police to detain people in order to arrest another individual in complete safety, the circumstances in those cases typically involve confined spaces and a significant relationship between the suspect they are about to arrest and his or her companion. (See e.g. People v Williams, 305 AD2d 804 [3d Dept 2003]; People v Burgos, 175 AD2d 211 [2d Dept 1991]; cf. People v Jenkins, 87 AD2d 526 [1st Dept 1982].)
Here, there were no such circumstances justifying the forcible detention of defendant. Six police officers, fully armed and wearing bulletproof vests and tactical gear, presented overwhelming force while defendant was simply walking away from Davis. Defendant had done nothing to suggest he posed a risk to the officers, and his minimal connection to Davis — a brief conversation on a public street in front of a bodega — does not support an inference that the two were confederates in wrongdoing or that they even knew each other. Certainly, the legitimate and understandable caution of police officers engaged in the dangerous task of arresting a violent fugitive may have permitted Detective Kuhnapfel to approach defendant to gain some explanatory information regarding if and how well he knew Davis. It may also have permitted him to briefly detain defendant, short of a forcible seizure, to ensure that defendant posed no risk to the arresting officers. But defendant’s mere presence in the company of a person the police intended to arrest did not permit the police to summarily force defendant against a nearby wall. The frisk that followed was the direct result of this impermissible forcible detention, and thus the recovery of the weapon was unlawful.
For all of the above reasons, defendant’s motion to suppress the weapon recovered from his waistband is granted.

 In their written response to defendant’s post-hearing memorandum, the People for the first time asked for an opportunity to reopen the hearing to present additional testimony supporting probable cause. That request is denied. Defendant first raised this issue in preliminary motion papers, again at the start of the hearing and finally at the close of the hearing in oral argument. The issue therefore comes as no surprise to the People, and there is no reason to vary from the rule that the People are entitled to only one full and fair opportunity to present evidence dispositive of the issues at a suppression hearing. (See People v Havelka, 45 NY2d 636 [1978]; cf. People v Dawson, 115 AD2d 611 [2d Dept 1985].)