OPINION OF THE COURT
Daniel P. Conviser, J.
The defendant is charged with one count of criminal sale of a controlled substance in the third degree. A hearing was held to determine whether the defendant was arrested with probable cause, whether an identification of him by an undercover police officer following his arrest was lawfully conducted and whether property recovered from his person, a cell phone and prerecorded buy money, was lawfully obtained. The People called one witness: Detective Candace McPherson. The court found her testimony to be credible. The defendant did not call any witnesses. For the reasons outlined below, the court holds that the evidence at the hearing indicated that the police did not have probable cause to arrest the defendant and that the property and identification at issue here were the fruits of that unlawful arrest. The defendant’s motion is therefore granted in its entirety.[1]
Statement of Facts
Detective McPherson testified that she has been a New York City police officer since 2007 and assigned to the Internal Affairs Bureau since 2004. She said that she had made over 100 narcotics-related arrests in her career, received specialized training in narcotics issues and had acted as the arresting officer in undercover buy and bust operations over 50 times. She said that she was the arresting officer in a buy and bust operation on October 17, 2013 and in that capacity arrested the defendant. Among other officers, the operation included a “ghost” undercover police officer (UC 5021) and a primary undercover *586 police officer (UC 5015).[2] The primary undercover officer was issued prerecorded buy money prior to the operation. On the date of the defendant’s arrest, the team had proceeded to the vicinity of 38 Rutgers Street in New York County and began receiving communications from UC 5021 at approximately 2:00 p.m.
UC 5021 provided detailed information to Detective McPherson about the fact that UC 5015 was walking in the area and who UC 5015 was talking to. UC 5021 then transmitted a “positive buy” communication, meaning that “the undercover actually purchased some type of narcotic from the defendants.”[3] The ghost also relayed that the location of the positive buy was inside 38 Rutgers Street. This occurred around 2:15 or 2:20 p.m. Following that communication, Detective McPherson testified, “[w]e [members of the field team other than the undercover officers] move into the location and placed all of the defendants under arrest.”[4] Both undercover officers were inside the building at the time. Martin Torres was placed under arrest outside the building where he was standing. A second defendant, Mr. Dailey, and Mr. Walker (the defendant here), were placed under arrest inside the building. The first time Detective McPherson saw Mr. Walker he was already under arrest at the location.
The three defendants were then searched. Prerecorded buy money was recovered from all three defendants; a ziplock bag of crack cocaine was recovered from Mr. Torres and a personal cell phone was recovered from Mr. Walker. UC 5015 also gave Detective McPherson two ziplock bags of crack cocaine that he said had been given by Mr. Walker to Mr. Torres and then to UC 5015.
Conclusions of Law
In this court’s view, the evidence presented at the hearing did not demonstrate that the police had probable cause to arrest the defendant. UC 5021 communicated the fact that UC 5015 had purchased narcotics from a group of multiple people inside a building. The police then went into the building and arrested multiple people. But the evidence at the hearing provided *587 absolutely no other relevant information regarding whether the arresting police officers had reasonable cause to believe the defendants they arrested were the same people who had allegedly sold narcotics to the undercover police officer.
In a hearing to determine whether the police have probable cause for an arrest, the People have the initial burden of presenting evidence demonstrating the legality of police conduct while the defense has the ultimate burden to demonstrate the police conduct was unlawful. (People v Moses, 32 AD3d 866 [2d Dept 2006].) In this court’s view, the People did not meet their initial burden of production in this case.
The sufficiency of communication evidence between undercover police officers and officers testifying at a suppression hearing seeking to establish probable cause were explored in the seminal case of People v Ketcham (93 NY2d 416 [1999]). Ketcham upheld the arrest of the defendant by an arresting officer based on communications from a ghost undercover police officer. In Ketcham, the ghost undercover officer radioed a “positive buy” and then provided a detailed physical description of the defendant, a detailed description of the location where the defendant was, the fact that the defendant was walking with a cane and the fact that he was walking with a woman. The arresting officer saw a person who matched these descriptions in all respects and arrested him. The arresting officer testified that he recognized the communication from the undercover, knew what a “positive buy” was and surmised that the ghost undercover officer had determined a drug sale had taken place because the ghost officer must have received a communication to that effect from the primary undercover.
The Court noted that under the “fellow officer rule” a police officer can make a lawful arrest with no personal knowledge of any criminality on a defendant’s part so long as he is acting at the direction of a fellow officer. To satisfy this rule, it must be demonstrated that the officer relaying information is generally trustworthy and that the information was “obtained in a reliable way.” (93 NY2d at 420 [internal quotation marks omitted].) The Court held that when “the hearsay informant is a police officer who imparts to fellow officers information gathered while personally participating in or observing an undercover drug transaction, there is little doubt as to the reliability of the informant or the basis of knowledge.” (Id.) The Court based its conclusion regarding the evidentiary rules applicable to undercover buy and bust operations on the fact that such opera *588 tions have “an anticipated, intended outcome” and that when such operations proceed as planned, the information derived from them is presumptively reliable. (93 NY2d at 422.)
In one passage of its opinion, the Court did appear to indicate that it might not be sufficient in an undercover buy and bust operation for an officer to simply communicate that a drug sale had taken place, without providing any direct evidence regarding the transmitting officer’s basis of knowledge for that assertion. Thus, the Court held that “[w]here, however, there is no evidence indicating how the informant obtained the information passed from one officer to another, there is nothing by which to measure the trustworthiness of that information.” (93 NY2d at 421, citing People v Parris, 83 NY2d 342, 350 [1994].)
Parris held that where the police relied upon double hearsay to provide probable cause for an arrest — first from a civilian informant to a police officer and then from that sending police officer to a second receiving police officer who testifies at a suppression hearing — the absence of evidence establishing a basis of knowledge by the initial civilian complainant would negate probable cause. A conclusory assertion by the sending officer that the complainant was an “eyewitness” was insufficient to establish the complainant’s basis of knowledge. (83 NY2d at 350.) The courts have sometimes also applied requirements like this to communications by fellow officers outside the “buy and bust” context. In People v Eastman (32 AD3d 965 [2d Dept 2006]), for example, a police officer testifying at a suppression hearing arrested a defendant based on an assertion by a fellow officer that the individual was “the suspect” without any further elaboration. This, the Court held, was insufficient to establish that the sending officer had “information sufficient to constitute probable cause for the arrest.” (32 AD3d at 966.)
The court in People v McLoyd (35 Misc 3d 822, 827 [Sup Ct, NY County 2012, Marks, J.], citing Ketcham) held that where the reliability of a sending officer’s hearsay statement to a testifying officer is challenged, “the prosecution is then required to establish that the officer who transmitted the information had probable cause to act.” Any other rule, the court pointed out, “would allow an illegal arrest to be insulated from challenge ‘by the decision of the instigating officer to rely on fellow officers to make the arrest.’ ” (Id. at 828 [citation omitted].)
Those same requirements are not imposed, however, to the communications of police officers conducting buy and bust operations. Courts deny suppression so long as evidence *589 indicates that an undercover officer engaged in a buy and bust operation simply transmitted a “positive buy” sign concerning an identified suspect to a fellow officer. (See e.g. People v Ramirez, 96 AD3d 474 [1st Dept 2012]; People v Wilson, 260 AD2d 325 [1st Dept 1999]; People v Stokes, 271 AD2d 237 [1st Dept 2000].) A positive buy sign concerning multiple defendants need not specify the role each defendant played. (People v Harris, 305 AD2d 282 [1st Dept 2003].) A testifying officer need not know which of multiple ghost officers he received a positive buy transmission from, so long as he recognizes all of the voices he hears as fellow police officers. (See People v Dickerson, 20 AD3d 359, 360 [1st Dept 2005].)[5] There need not be direct evidence that an officer who detains a suspect heard a hearsay transmission indicating that the defendant engaged in a narcotics sale. Evidence that all members of a buy and bust field team were equipped with working radios, that a transmission was made to the field team and that a testifying officer heard it permits the inference that all of the other members of the field team heard the same transmission. (People v Gonzalez, 238 AD2d 201 [1st Dept 1997], revd 91 NY2d 909 [1998].) As is true for any witness, a testifying officer need not have an independent recollection of events, so long as his recollection is refreshed by a document of some kind whether prepared by him or not. (People v Phillibert, 99 AD3d 531 [1st Dept 2012].)
Probable cause has even been found where a hearsay statement from a fellow officer identified a particular person but said nothing about what that person had allegedly done. In People v Fisher (270 AD2d 90 [1st Dept 2000]) the Court found sufficient a communication by an undercover officer in a buy and bust operation which provided the description and location of a subject, without apparently conveying any information about the suspect’s actions. The Court held that
“because of the particular nature and purpose of a ‘buy and bust’ operation, the backup officers could reasonably infer that a communication from an undercover officer providing a description and location was intended to convey that a drug transaction involving said person took place at that location. There would be no other reason under these cir *590 cumstances for the undercover officer to transmit a description.” (Id. at 91 [citation omitted]; see also People v Vestal, 270 AD2d 92 [1st Dept 2000] [same].)
But the law does require that the person who allegedly sold narcotics be identified in a transmission. (People v White, 255 AD2d 164 [1st Dept 1998]; People v Torres, 252 AD2d 364 [1st Dept 1998].) Mere presence at the scene where a narcotics transaction has taken place does not provide probable cause for an arrest. (.People v Martin, 32 NY2d 123 [1973]; People v Elliotte, 283 AD2d 719 [3d Dept 2001]; People v Hodge, 189 AD2d 588 [1st Dept 1993].) An undercover police officer who transmits a “positive buy” signal to an arresting officer and then provides a specific description of a suspect may establish probable cause to arrest that suspect. But if the undercover officer here transmitted a positive buy communication regarding a drug transaction which had just occurred on a corner at Times Square during rush hour, the police would obviously not be entitled to simply arrest anyone standing at that corner.
The evidence here indicated that a group of defendants sold narcotics in a building and that shortly thereafter three defendants were arrested in that same building. There was no evidence during the hearing that the arresting officers had any physical description, even with respect to such basic issues as race or gender, of any of the defendants who were arrested. There was no evidence presented regarding a single characteristic of the building. The court did not learn where in the building the sale and the arrest took place. It was not clear whether people other than the defendants were in or entering or leaving the building at the time. Detective McPherson did not participate in the defendants’ initial apprehension and so could not even describe the circumstances under which the defendant’s initial arrest took place.
Of course, the fact that all three defendants after their apprehension were found to have prerecorded buy money and that one defendant (not the subject of the instant motion) was found with a ziplock bag of crack cocaine, strongly suggests that the police arrested the right people. But such a retrospective analysis is obviously irrelevant to whether the police had probable cause to arrest the defendants in the first place. It is possible that the officers who arrested the defendants had more specific information about the defendants’ identities when the arrests were made than was elicited during the hearing. It is possible *591 that the deficiency here was not the quantum of evidence the police had but the record which was made during the hearing. Either way, however, in the court’s view, probable cause to arrest the defendant was not established.
As noted, supra, Detective McPherson testified that the positive buy communication she received from UC 5021 which then led to the arrests of the three defendants indicated to her that UC 5015 had purchased narcotics from “the defendants.” Perhaps there is an argument to be made that this court might simply assume these words provided some type of identifying information about the specific defendants who were arrested here, such as physical descriptions, and in reliance on that specific information, the police then went to the building and arrested the correct people. While the law has allowed broad inferences to be drawn from the evidence in buy and bust cases, however, it does not allow a court to simply construct an evidentiary narrative out of whole cloth and supply basic information which is missing at a hearing. There is some outer limit to the degree to which a court can simply fill in the blanks, even at a hearing to determine whether probable cause to arrest exists in a buy and bust operation.
Our law, in this court’s view, has established a very low bar for the People to meet in these cases. But a perpetrator must still be identified before an arrest can take place. Indeed, it has been held that conclusory testimony that a defendant was arrested because he matched the description provided by a sending officer is insufficient to establish probable cause to arrest that particular defendant. The details of any such description must be elicited at a hearing so the court can at least assess whether the police arrested the person a double hearsay communication asserted was the suspect. (People v Garcia, 232 AD2d 272 [1st Dept 1996]; People v Castro, 206 AD2d 333 [1st Dept 1994].) Moreover, if a description transmitted to an arresting officer might be fairly attributed to multiple people in a group, probable cause to arrest any particular person matching that description will not exist. (People v Skrine, 125 AD2d 507 [2d Dept 1986].)
It is clear that the recovery of prerecorded buy money and a cell phone from the defendant’s person and the identification of the defendant by UC 5021 following his arrest were the fruits of his unlawful arrest. Moreover, the doctrines of attenuation, inevitable discovery or independent source which serve to remove the taint of an unlawful arrest in some cases have no applica *592 tion here. Since the defendant was arrested without probable cause, his motion to suppress the property recovered from him and the identification of him by UC 5021 is granted.

. The court granted the defendant’s motion in a brief bench ruling on June 11, 2014 with an indication that a written decision would follow.

. Undercover buy and bust operations typically include a “primary” undercover officer whose job it is to purchase illegal narcotics and a “ghost” undercover officer whose primary role is to watch and safeguard the primary undercover officer and report information to other members of the buy and bust field team.

. June 10, 2014 hearing tr at 13, line 25 at 14, line 1.

. Id. at 14, lines 13-14.

. It would obviously be impossible to require direct evidence that a sending officer had a reliable basis of knowledge for a double hearsay assertion that a defendant sold narcotics if there is no requirement that the sending officer’s identity even be known.